[No. E021166. Fourth Dist., Div. Two. Apr. 14, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
GABRIEL LOUIS HERNANDEZ, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part 2.

## COUNSEL

Stuart A. Skelton, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Carl H. Horst and Craig S. Nelson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RAMIREZ, P. J.**—A jury convicted Gabriel Louis Hernandez of inflicting corporal injury upon a cohabitant (Pen. Code, § 273.5, subd. (a)), possessing methamphetamine (Health & Saf. Code, § 11377, subd. (a)) and being under the influence of methamphetamine (Health & Saf. Code, § 11550, subd. (a)). The jury further found that Hernandez had suffered two prior strike convictions. (Pen. Code, § 667, subds. (b)-(i).) He was sentenced to prison for two consecutive 25-year-to-life terms and appeals, claiming evidence was improperly admitted and his trial counsel was incompetent. We reject his contentions and affirm.

### FACTS

Hernandez and the victim had been married, divorced, reconciled and had been cohabiting for five years since reconciliation. At the time of trial, she was unavailable to be a witness. During the early morning hours of August 17, 1996, the victim called 911 from a convenience store, reporting that Hernandez had battered her. An officer arrived and she told him that Hernandez had "tripped out," accusing her of having an affair, and when she told him he was crazy, he got mad and wrestled her to the floor. When she got up, he hit her about eight times in the face. Hernandez then ordered her out of the apartment they shared.

The victim's eyes were swollen and bruised. Her left shoulder was scratched and red. The officer was unable to locate Hernandez at the couple's apartment that morning, but saw his car parked there early the following morning. The officer then went to the apartment, where the victim falsely told the officer that Hernandez was not present. However, she did consent to the officer entering to see if everything was all right. When the officer went into the bedroom, he found Hernandez lying on a mattress, holding a rolled-up dollar bill. Under the mattress was a mirror containing methamphetamine. Hernandez appeared to be under the influence of the drug and testing of a urine sample taken from him at jail showed the drug in his system.

Hernandez told the officer that he had gotten into an argument with the victim over her alleged infidelity and he became very angry with her. He confronted the victim and hit her hard six times in the face because he was angry. He did not say that the victim had ever struck or assaulted him. He said he was embarrassed about the way her face looked. He had no injuries.

Hernandez took the stand at trial and claimed that it appeared as though a man had sneaked out of the couple's apartment after he arrived home from work late on August 16. When Hernandez accused the victim of "bring[ing her] business" into their home, the victim jumped on his back and began clawing him.[1] He knocked her off with his elbow. She fell back, scraping her back. When Hernandez attempted to put their son on the bed, she attacked him again, scratching his face. Hernandez shoved her to the floor. While she was on the ground, he hit her three or four times with his right hand.[2] He picked her up, they wrestled and he pushed her out the door.

Hernandez testified that the victim invited him to return to their apartment the morning the police found him there. He joined the victim in the bedroom where she obtained a dollar bill from him which she rolled up before snorting some drugs. When the officer knocked on the front door, she threw the rolled-up bill on the floor near Hernandez. Hernandez saw the mirror bearing the drugs and he threw a blanket over it.

---

[1]The officer, however, did not testify that Hernandez told him this. Contrary to the officer's testimony, Hernandez testified that the officer noticed the scratches on his back and face.

[2]He contradicted the officer's testimony that he admitted to him that he hit the victim about six times. He also asserted that he had not told the officer that he hit the victim because he was angry at her. However, he did admit on the stand that he became angry with the victim when she began attacking him.

ISSUES AND DISCUSSION

1. *Admission of the Victim's Statements*

Before trial began, the prosecution moved to admit statements made by the victim to the police officer pursuant to Evidence Code section 1370.[3] That section provides:

"(a) Evidence of a statement by a declarant is not made inadmissible by the hearsay rule if all of the following conditions are met:

"(1) The statement purports to narrate, describe or explain the infliction or threat of physical injury upon the declarant.

"(2) The declarant is unavailable as a witness pursuant to Section 240.

"(3) The statement was made at or near the time of the infliction or threat of physical injury. Evidence of statements made more than five years before the filing of the current action or proceeding shall be inadmissible under this section.

"(4) The statement was made under circumstances that would indicate its trustworthiness.

"(5) The statement was made in writing, was electronically recorded, or made to a law enforcement official.

"(b) For purposes of paragraph (4) of subdivision (a), circumstances relevant to the issue of trustworthiness include, but are not limited to, the following:

"(1) Whether the statement was made in contemplation of pending or anticipated litigation in which the declarant was interested.

"(2) Whether the declarant has a bias or motive for fabricating the statement, and the extent of any bias or motive.

"(3) Whether the statement is corroborated by evidence other than statements that are admissible only pursuant to this section.

"(c) A statement is admissible pursuant to this section only if the proponent of the statement makes known to the adverse party the intention to

---

[3]Unfortunately, a copy of the People's motion in this regard was not made part of the record on appeal.

offer the statement and the particulars of the statement sufficiently in advance of the proceedings in order to provide the adverse party with a fair opportunity to prepare to meet the statement."

.The defense objected to admission of the statements, contending that Evidence Code section 1370 violated the confrontation and due process clauses of the Constitution and the right of counsel in that "it does not . . . allow . . . us to cross-examine the hearsay declarant about the events . . . that resulted in the . . . charges." The trial court granted the prosecution's motion, finding that Evidence Code section 1370 promotes an important public policy and assures the reliability of the statements, therefore, it does not violate the confrontation clause.

■ Hernandez here contests the trial court's ruling, arguing, first, that Evidence Code section 1370 denies due process because it provides no reciprocity. Hernandez waived this argument by not asserting it below. (See Evid. Code, § 353; *People* v. *Mayfield* (1997) 14 Cal.4th 668, 791 [60 Cal.Rptr.2d 1, 928 P.2d 485]; *People* v. *Rogers* (1978) 21 Cal.3d 542, 548 [146 Cal.Rptr. 732, 579 P.2d 1048].) Moreover, it is meritless.

The only case Hernandez cites in support of his position is *Wardius* v. *Oregon* (1973) 412 U.S. 470 [93 S.Ct. 2208, 37 L.Ed.2d 82]. However, *Wardius* concerned a discovery statute that required the defense to notify the prosecution of alibi witnesses it intended to call, but it did not provide for the prosecution to notify the defense of any witnesses it intended to call to refute the alibi. The United States Supreme Court concluded that it was fundamentally unfair to force the defense to divulge the details of its case to the prosecution while subjecting the defense to the hazard of surprise concerning refutation of the very evidence it was obliged to disclose.

As the People correctly point out, Evidence Code section 1370 is not one-sided—it permits the defendant to utilize it to the same extent the People may. Also, as the People point out, in *Whitman* v. *Superior Court* (1991) 54 Cal.3d 1063, 1082 [2 Cal.Rptr.2d 160, 820 P.2d 262], the California Supreme Court rejected an identical challenge to Penal Code section 872, which permitted probable cause findings for bindovers to be made on the basis of out-of-court statements related to experienced law enforcement officers. The high court said, "We find no similar unfairness here for, properly construed, the new hearsay statute contains no broad grant of authority to the prosecutor to rely on hearsay evidence. The section merely specifies a further, limited exception to the general hearsay exclusionary rule of Evidence Code section 1200, by allowing a probable cause finding to be based on certain hearsay testimony by law enforcement officers having

specified experience or training. In light of the specialized nature of the exception, we see nothing fundamentally unfair in failing to provide some similar hearsay exception favoring the defense. (Indeed, although we leave the question open, the new provision might be interpreted as permitting *the defendant* to call a law enforcement officer to relate statements which might rebut a finding of probable cause.) Defendants continue to enjoy the benefits of all preexisting hearsay exceptions." (*Whitman* v. *Superior Court, supra,* 54 Cal.3d at p. 1082, italics in original.)

Similarly, in *People* v. *Brodit* (1998) 61 Cal.App.4th 1312 [72 Cal.Rptr.2d 154], the California Court of Appeal rejected an identical challenge to similar provisions (which apply to declarations by child abuse victims), saying: "[W]e disagree with appellant's premise that the new hearsay exceptions may only be used to benefit prosecutors. Nothing in the statutes explicitly limits the hearsay exceptions to evidence which is inculpatory and, as we explain below, occasions may arise in which the defense may find it useful to introduce hearsay testimony under these new exceptions. [¶] . . . [¶] Here, we do not perceive . . . unfairness in [the provisions]. First, as we have noted, nothing in those sections limits the exception to 'inculpatory' evidence. In fact, cases may frequently arise where the defense will find it useful to introduce evidence under these exceptions. . . . Thus, both the prosecution and defense may make use of these new exceptions to the hearsay rule. [Citation.] Contrary to appellant's assertion, [these provisions] do not create a one-way street in favor of the prosecution." (*People* v. *Brodit, supra,* 61 Cal.App.4th at pp. 1325-1326, fns. omitted.)

*Brodit* also relied on *Whitman* to declare that even if the hearsay provisions there pertinent did create "a one-way flow of evidence in favor of the prosecution," they did not violate due process. (*People* v. *Brodit, supra,* 61 Cal.App.4th at p. 1326.)

Hernandez provides no persuasive argument that the analysis in *Whitman* and *Brodit* should not apply here.

Next, Hernandez reiterates the argument he made below, that Evidence Code section 1370 violates the confrontation clause because the statements are admitted without the opportunity for cross-examination of the declarant. However, he admits that with a particularized guaranty of trustworthiness or adequate indicia of reliability, such statements may be admitted without violating the confrontation clause. (*Ohio* v. *Roberts* (1980) 448 U.S. 56, 66 [100 S.Ct. 2531, 2539, 65 L.Ed.2d 597].) Alternatively, statements admitted under a firmly rooted exception to the hearsay rule do not violate the confrontation clause. (*Idaho* v. *Wright* (1990) 497 U.S. 805, 816, 818 [110 S.Ct. 3139, 3147, 3148, 111 L.Ed.2d 638].)

The People correctly assert that Evidence Code section 1370 is similar to the hearsay exception for spontaneous statements,[4] which is firmly rooted. (See, e.g., *People v. Sully* (1991) 53 Cal.3d 1195 [283 Cal.Rptr. 144, 812 P.2d 163]; *People v. Gallego* (1990) 52 Cal.3d 115 [276 Cal.Rptr. 679, 802 P.2d 169]; *People v. Farmer* (1989) 47 Cal.3d 888 [254 Cal.Rptr. 508, 765 P.2d 940].) Additionally, Evidence Code section 1370 contains particularized guarantees of trustworthiness and adequate indicia of reliability by requiring the statement to be made (1) at or near the time of the incident (similar to a spontaneous declaration) by a person who experienced the incident, firsthand, (2) under circumstances indicating its trustworthiness, including[5] whether it had been made in contemplation of litigation, whether the declarant had a bias or motive to fabricate and whether it is corroborated by other evidence not admissible under Evidence Code section 1370 and (3) to have been recorded in writing or electronically, or to have been made to a police officer (who normally makes a written report of such statements).[6] (See *People v. Gallego, supra,* 52 Cal.3d at pp. 176-177.) While we agree with Hernandez that, under *Idaho v. Wright, supra,* 497 U.S. 805, corroboration by other evidence is not a legitimate component of trustworthiness, its presence in Evidence Code section 1370 does not render the statute unconstitutional because the section still requires the essential indicia of trustworthiness and it suggests other legitimate factors which may establish that. Absent a case where the trial court relied heavily upon the presence of corroborating evidence in making its determination that the statement bears indicia of reliability, the confrontation clause would not be violated. Therefore, we cannot agree with Hernandez that Evidence Code section 1370 violates the confrontation clause.

■ Finally, Hernandez contends that even if Evidence Code section 1370 is constitutional, the trial court here abused its discretion in admitting the statements because they did not bear sufficient indicia of reliability.

---

[4]That exception is governed by Evidence Code section 1240, which provides: "Evidence of a statement is not made inadmissible by the hearsay rule if the statement: [¶] (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception."

[5]The statute provides: "For purposes of [the requirement that the statement was made under circumstances that would indicate its trustworthiness] . . . circumstances relevant to the issue of trustworthiness *include, but are not limited to,* the following: [¶] (1) Whether the statement was made in contemplation of pending or anticipated litigation in which the declarant was interested. [¶] (2) Whether the declarant has a bias or motive for fabricating the statement, and the extent of any bias or motive. [¶] (3) Whether the statement is corroborated by evidence other than statements that are admissible only pursuant to this section." (Evid. Code, § 1370, subd. (b).)

[6]It cannot be ignored that a police officer is generally a neutral and detached party and that making a false report to an officer is a violation of the law.

However, Hernandez ignores the fact that he failed to object to the statements below on this ground, and, therefore, he waived any such objection. (See Evid. Code, § 353; *People* v. *Mayfield, supra,* 14 Cal.4th at p. 791; *People* v. *Rogers, supra,* 21 Cal.3d at p. 548.) Moreover, he is incorrect.

In arguing below that the statements should be admitted under Evidence Code section 1370, the prosecutor asserted that there were no circumstances suggesting the victim had a motive to lie, that she had been involved with Hernandez for 15 years, including having been married to him, having had his child and having resumed a relationship with him after they had been divorced. Additionally, the victim was upset and crying when she made the statements and made them to obtain help rather than to "connive." Finally, there existed corroboration for the statements in the form of the victim's recorded 911 call, which was admissible as a spontaneous statement, the admission of Hernandez that he punched the victim several times in the face and two sets of photographs of the victim, documenting her injuries. Hernandez did not dispute any of these representations below.

The trial court agreed with the prosecutor, finding there was sufficient indicia of reliability in ". . . [the prosecutor's] offer of proof [that] there is no indication of bias by the victim who is now deceased [and] the physical injuries that were photographed as well as statements made by the defendant himself."[7]

After his silence on the subject below, Hernandez now points to facts, adduced at trial after the motion was heard, indicating that the statement was rendered under circumstances indicating it was not trustworthy. He is too late. We may assess the trial court's ruling only on the facts made known to it at the time it made that ruling. (See *People* v. *Barnard* (1982) 138 Cal.App.3d 400, 405 [188 Cal.Rptr. 176]; *In re James V.* (1979) 90 Cal.App.3d 300, 304 [153 Cal.Rptr. 334].) To do otherwise would require us to hold the trial court to an impossible standard. At the time this motion was decided, Hernandez pointed to no facts which would undermine the trustworthiness of the victim's statements. Therefore, we cannot conclude that the trial court abused its discretion, that is, acted unreasonably, in admitting the statements.

2. *Incompetency of Counsel**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[7]Hernandez does not assert that the trial court would have ruled differently had it not relied on the corroborating evidence. Indeed, the prosecutor's statement of valid factors indicating trustworthiness provided a sufficient basis for admission.

*See footnote, *ante*, page 417.

## DISPOSITION

The judgment is affirmed.

Ward, J., and Gaut, J., concurred.

A petition for a rehearing was denied May 6, 1999, and appellant's petition for review by the Supreme Court was denied July 21, 1999. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.