[No. C039657. Third Dist. May 5, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL CHRISTOPHER KONS, Defendant and Appellant.

**COUNSEL**

Linnéa M. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, John G. McLean and Angelo S. Edralin, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ROBIE, J.**—Mark Johnson made two statements to police officers about who shot him. In the first statement, made immediately after he was shot, Johnson identified the person who shot him as "Mad Ball." One or two days later, Johnson gave a recorded statement to a police officer in the hospital. In the second statement, Johnson picked out defendant Michael Christopher Kons as the shooter from a photographic lineup. This second statement was the only evidence at trial that established defendant was the shooter. Because Johnson did not testify at trial, both statements were admitted under Evidence Code section 1370.[1]

Defendant challenges the admission of these two statements. Because we conclude the admission of the second statement violated defendant's constitutional right to confront the witnesses against him, we shall reverse defendant's convictions for attempted murder and assault with a firearm and remand for retrial.

INTRODUCTION

I

*Procedural Background*

By information, the People charged defendant with the attempted murder of Mark Johnson, assault on Johnson with a firearm and resisting arrest.[2] (Pen. Code, §§ 187, subd. (a), 664, 245, subd. (a)(2), 69.) On the attempted murder charge, the information also alleged defendant: (a) personally used a firearm in the commission of the offense; (b) personally discharged a firearm; (c) personally discharged a firearm causing great bodily injury; and

---

[1]All further statutory references are to the Evidence Code unless otherwise indicated.

[2]Because the resisting arrest charge is not germane to any issue on appeal, we shall not discuss this charge further.

(d) committed these offenses for the benefit of, at the direction of, and in association with a criminal street gang. (Pen. Code, §§ 1203.06, subd. (a)(1), 12022.5, former subd. (a)(1), 12022.53, subds. (b), (c), (d), 186.22, subd. (b)(1).) As to the assault charge, the information alleged defendant personally used a firearm. (Pen. Code, §§ 1203.06, subd. (a)(1), 12022.5, former subd. (a)(1).)

The People moved in limine to admit evidence of statements by Johnson: (a) describing the circumstances surrounding the shooting; (b) identifying his assailant as "Mad Ball"; and (c) identifying defendant as the man who shot him from a photographic lineup. The court granted the People's motion, finding the prosecution exercised due diligence and Johnson was unavailable.

## II

### The Shooting

At trial, Trena Limb testified she was home in the early morning hours of February 18, 2001. She went outside on her balcony overlooking an alley. She heard a noise to her left. When she looked over, she saw two men in the alley about 50 feet away. One of the men was on a bicycle. Limb saw one man put his hand on the shoulder of the man on the bicycle, put a gun to his chest, and pull the trigger. The shooter then got into a car and drove away.

Limb turned to her mom and told her to call 911. At trial, Limb did not identify either man, but described the shooter as five feet eight inches or five feet nine inches tall and in the 200-pound range.[3]

Sacramento Police Officer Casey Dionne responded to a report of a shooting. Officer Dionne arrived at an apartment on La Sandia Way and followed a blood trail upstairs where he located the victim, Johnson. Johnson was crying and screaming in pain. Johnson had a gunshot wound to his right arm and two bullet holes in his right shoulder. Officer Dionne testified Johnson repeatedly and loudly told the officer "I've been shot, man. I've been shot." Johnson also told the officer "Mad Ball shot me in the alley, man." Johnson identified "Mad Ball" as a member of the Crips gang.

In his police report, Officer Dionne wrote that Johnson was uncooperative with the police and paramedics while they attempted to treat him. Johnson refused to answer any more questions of police officers that night.

---

[3]On the night of the shooting, she described the shooter as five feet eight inches to five feet 10 inches tall and weighing 240 pounds.

Johnson was brought to the trauma unit at UC Davis Medical Center with multiple gunshot wounds. Johnson was shot once in the shoulder-chest area and once in the arm. Johnson may have been shot a third time, but the doctor was uncertain.

Officer Dionne ran a computer check and found Donald Norwood was a gang member who went by the nickname "Mad Ball."

Sacramento Police Detective Laura Jean Gracia visited Johnson in the hospital a day or two after he had been shot.[4] The victim was in good condition and able to talk. Johnson told Detective Gracia the shooting happened while he was walking down an alley towards the "candy lady's house." (Detective Gracia explained people in this neighborhood buy candy at local stores to resell to kids to supplement their income.[5]) Johnson encountered "Mad Ball" standing in a group of six or seven other men in the alley. Johnson had met defendant once before.

Detective Gracia asked Johnson, "[W]hy'd you stop? Why'd you have this encounter with [this] dude." Johnson responded with the following: While he was riding on his bike down the alley, the shooter called to him and said "Where that pack at?" Johnson responded, "What? What pack?" The shooter asked Johnson, "Where you from?" When Johnson responded, "Man, I don't gang bang," the man "just stood up, pulled the gun out and shot." Johnson turned around as quickly as he could and tried to get away. Johnson claimed he was shot three to four times from a range of about three or four feet away.

Detective Gracia testified that Johnson identified the assailant as a tall light-skinned Black man he knew as "Mad Ball." Johnson informed her he believed he was 16 or 17 years old. Johnson further identified the "Mad Ball" who shot him as defendant from a photographic lineup Detective Gracia provided to Johnson at the hospital. A tape of this interview was played for the jury. We have also reviewed the audiotape.

Detective Gracia also testified she validated defendant as a member of the Crips gang. Her validation was based upon defendant's admission he was a gang member, his tattoos, his dark blue clothing, and the fact he was in the company of other gang members. Defendant also had a tattoo of the name "Little Mad Ball" on his left forearm.

---

· [4]It appears more likely than not the statement was taken the morning after the shooting, about 33 hours after the shooting. The shooting occurred about 1:30 a.m. on February 18, 2001. The audiotape and transcript state the statement was taken at 11:05 a.m. on February 19, 2001. However, the detective who took the statement testified she took it either on February 19 or 20—a day or two after the shooting.

[5]Detective Gracia testified this could be a "narcotics term."

Detective Gracia also testified that she knew of two other men who use the nickname "Mad Ball." The first one was Donald Norwood and the second was Romeo Brown. Norwood is in his mid- to late 20's and between five feet eight inches and five feet nine inches tall and approximately 225 pounds. Brown is 13 or 14 years old and about five feet tall and about 125 pounds.

The eyewitness to the shooting, Limb, testified that Norwood was about the same build as the shooter but that defendant was the same height as the shooter. Limb thought the shooter was bulkier than defendant.

Norwood testified at trial. He admitted to being a member of the Crips gang and that his nickname was "Mad Ball." Norwood did not know Johnson. Norwood denied any knowledge of the shooting.

Neither Johnson nor defendant testified at trial.

The jury convicted defendant on all counts and found all of the enhancements true. The trial court sentenced him to an aggregate term of 32 years eight months to life in state prison. Defendant appeals.

DISCUSSION

*Constitutional Challenge to the Admission of Johnson's*
*Statement Under Evidence Code Section 1370*

As defendant argues in his opening brief, Johnson's "statement was the only evidence identifying [defendant as the shooter.] Without that evidence, [defendant] could not have been convicted." We agree. We shall conclude this statement was improperly admitted over defendant's objections that it violated his confrontation rights because the statement itself did not contain the requisite particularized guarantees of trustworthiness to overcome its presumed unreliability.[6]

Defendant challenges the admission of Johnson's second statement because it violates his due process and confrontational rights. We agree with his latter contention.

█ Defendant makes no serious argument concerning his due process right on appeal, nor did he raise this challenge at trial. Any argument the

---

[6]As a result, we shall not address defendant's contentions the prosecution failed to show it exercised due diligence to secure Johnson's presence at trial, the trial court erred by considering corroboration by evidence other than the circumstances surrounding the making of the statements in ruling the statements admissible, and the trial court erred in refusing to exclude this evidence under section 352.

admission of this evidence violated due process is therefore waived. (*People v. Hernandez* (1999) 71 Cal.App.4th 417, 425 [83 Cal.Rptr.2d 747].) His appellate argument focuses exclusively on the right of confrontation as shall we.

"The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, provides: 'In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.' [¶] From the earliest days of our Confrontation Clause jurisprudence, we have consistently held that the Clause does not necessarily prohibit the admission of hearsay statements against a criminal defendant, even though the admission of such statements might be thought to violate the literal terms of the Clause. [Citations.] We reaffirmed only recently that '[w]hile a literal interpretation of the Confrontation Clause could bar the use of any out-of-court statements when the declarant is unavailable, this Court has rejected that view as "unintended and too extreme." ' [Citations.]" (*Idaho v. Wright* (1990) 497 U.S. 805, 813-814 [110 S.Ct. 3139, 3145-3146, 111 L.Ed.2d 638].) While the hearsay rule and the confrontation clause protect similar values, the United States Supreme Court has consistently refused to "equate the Confrontation Clause's prohibitions with the general rule prohibiting the admission of hearsay statements." (*Id.* at p. 814 [110 S.Ct. at p. 3146].)

In *Ohio v. Roberts* (1980) 448 U.S. 56, 66 [100 S.Ct. 2531, 2539, 65 L.Ed.2d 597], the Supreme Court set forth a general framework with which to determine whether admission of a hearsay statement meets the requirements of the confrontation clause. "In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable.[7] Even then, his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." (*Ibid.*, fn. omitted.)

The particularized guarantees of trustworthiness must be based on the circumstances that surround making the statement and must render the declarant particularly worthy of belief. (*Idaho v. Wright, supra*, 497 U.S. at p. 819 [110 S.Ct. at pp. 3148-3149].) Hearsay can only be admitted over a confrontation clause objection where cross-examination would be of marginal utility. (*Id.* at p. 820 [110 S.Ct. at p. 3149].) "Thus, unless an affirmative reason, arising from the circumstances in which the statement

---

[7]Here, we shall assume, without deciding, Johnson was unavailable at trial.

was made, provides a basis for rebutting the presumption that a hearsay statement is not worthy of reliance at trial, the Confrontation Clause requires exclusion of the out-of-court statement." (*Id.* at p. 821 [110 S.Ct. at pp. 3149-3150].) The Supreme Court also teaches us that "hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial." (*Id.* at p. 822 [110 S.Ct. at p. 3150].)

Section 1370 contains several provisions designed to ensure statements admitted under that section contain sufficient indicia of reliability. It provides, "(a) Evidence of a statement by a declarant is not made inadmissible by the hearsay rule if all of the following conditions are met: [¶] (1) The statement purports to narrate, describe, or explain the infliction or threat of physical injury upon the declarant. [¶] (2) The declarant is unavailable as a witness . . . . [¶] (3) The statement was made at or near the time of the infliction or threat of physical injury . . . . [¶] (4) The statement was made under circumstances that would indicate its trustworthiness. [¶] (5) The statement was made in writing, was electronically recorded, or made to a physician, nurse, paramedic, or to a law enforcement official." Subdivision (b) further describes circumstances relevant to whether a statement is sufficiently trustworthy to be admitted: "(1) Whether the statement was made in contemplation of pending or anticipated litigation in which the declarant was interested. [¶] (2) Whether the declarant has a bias or motive for fabricating the statement, and the extent of any bias or motive. [¶] (3) Whether statement is corroborated by evidence other than statements that are admissible only pursuant to this section."

In *People v. Hernandez,* Division Two of the Fourth District Court of Appeal concluded section 1370 may sometimes be "similar to the hearsay exception for spontaneous statements, which is firmly rooted." (*People v. Hernandez, supra,* 71 Cal.App.4th at p. 424, fn. omitted.) The *Hernandez* court also concluded section 1370 "contains particularized guarantees of trustworthiness and adequate indicia of reliability . . . ." (*Hernandez,* at p. 424.) Consequently, the court concluded section 1370 does not violate the confrontation clause. (*Hernandez,* at p. 424.)

We agree with *Hernandez*'s conclusion section 1370 includes factors that may be properly considered under the confrontation clause's requirement of trustworthiness before a hearsay statement may be admitted against a criminal defendant. The statute requires that the statement concern the personal injury of the declarant. This ensures the personal knowledge of the declarant. The statute requires that the statement was made at or near the time of the injury or threat thereof. The trauma of the infliction, or threat of

infliction, of physical injury enhances the reliability of statements at or near the time of the trauma because it reduces the time and ability of the declarant to prevaricate or for others to coach the declarant. The statute also requires that the statement be made in writing or recorded electronically or made to medical or law enforcement personnel. People may be more likely to speak truthfully "on the record." Statements made to medical personnel about injuries are also more likely to be trustworthy. (See, e.g., § 1251 [evidence of medical condition].) Finally, the statute requires that the statement was made under circumstances that indicate its trustworthiness (the touchstone of the confrontation clause). In assessing this final critical point, the court may examine the declarant's bias, motive to lie, and whether the statement was made in contemplation of litigation. These are particularized guarantees of trustworthiness. (*People v. Hernandez, supra,* 71 Cal.App.4th at p. 424.)

We do not agree with *Hernandez*'s suggestion section 1370 passes constitutional muster simply because it is akin to the firmly rooted "spontaneous declaration" hearsay exception codified in section 1240. Section 1370 can sometimes come close to the "spontaneous declaration" exception (as it did in *People v. Hernandez, supra,* 71 Cal.App.4th at p. 424). In those circumstances, however, the hearsay statement is admissible under section 1240 and there is no need to rely upon the exception contained in section 1370.

By definition, section 1370, enacted in 1996, is not a firmly rooted hearsay exception for confrontation clause purposes. Thus, the "firmly rooted" hearsay exception rule is of no assistance in ascertaining whether evidence admissible solely under section 1370 should be admitted in light of a confrontation clause objection.

Johnson's first statement, made while he was still in immediate shock from being shot, may well qualify as a "spontaneous declaration" as it was made while he was in severe pain from the shooting immediately thereafter. The second statement, however, is another matter. This statement, which identifies the assailant, does not fall within the firmly rooted spontaneous declaration hearsay exception. It was made at least a day later (and possibly two days later) under detailed questioning from the police. As the trial court noted, Johnson "had two days to collect himself somewhat." Thus, the admission of Johnson's statement turns on the "particularized guarantees of trustworthiness" prong of the test set forth in *Ohio v. Roberts, supra,* 448 U.S. at page 66 [100 S.Ct. at page 2539].

In examining whether a statement has particularized guarantees of trustworthiness, the Supreme Court identified a number of factors that may be considered by a court in the context of child sexual abuse cases. (*Idaho v.*

*Wright, supra,* 497 U.S. at pp. 821-822 [110 S.Ct. at pp. 3149-3150].) These factors include: (a) whether the statements were spontaneous and consistent; (b) whether the statements reflected the mental state of the declarant; (c) whether the statements contained terminology unexpected of the child of a similar age; and (d) a lack of motive to fabricate. (*Ibid.*) The court concluded, "These factors are, of course, not exclusive, and courts have considerable leeway in their consideration of appropriate factors. We therefore decline to endorse a mechanical test for determining 'particularized guarantees of trustworthiness' under the Clause. Rather, the unifying principle is that these factors relate to whether the child declarant was particularly likely to be telling the truth when the statement was made." (*Id.* at p. 822 [110 S.Ct. at p. 3150].) ■ We independently review the trial court's ruling the statement was trustworthy. (*People v. Roberto V.* (2001) 93 Cal.App.4th 1350, 1374 [113 Cal.Rptr.2d 804].)

■ Johnson's second statement to the police, while he was in the hospital, fails to contain sufficient indicia of trustworthiness to be admitted in the face of defendant's confrontation clause objection. The evidence failed to establish Johnson was particularly likely to be telling the truth when he made this statement.

First, the statement was made over a day and possibly two days after the shooting. While Johnson's memory of the event might have been fresh, Johnson had time to collect himself and come up with a story. When the police officers arrived, Johnson was apparently visiting with friends, who may or may not have been able to coach him about his statement.

Second, the People point out that "there was no evidence of any bias or motive to lie on the part of" Johnson. The fact there is nothing in the record to establish a bias or motive by Johnson against defendant is not a sufficient indicia of trustworthiness. Because, under *Ohio v. Roberts, supra,* 448 U.S. at page 66 [100 S.Ct. at page 2539], the hearsay statement is inherently unreliable (and hence inadmissible), until that presumption is rebutted based on the circumstances in which the statement was made, we must presume the declarant is biased or mistaken until the prosecution presents some evidence to the contrary to establish the declarant's statement is reliable. The absence of evidence is not enough. Moreover, here, Johnson was uncooperative when police questioned him on the day of the shooting, suggesting that he might not want to identify the true perpetrator for a variety of reasons. The totality of the circumstances here does not provide a basis for rebutting the presumption the statement might be unreliable. Importantly, one of the purposes of cross-examination is to reveal bias or motive. (*Idaho v. Wright, supra,* 497 U.S. at pp. 819-820 [110 S.Ct. at pp. 3148-3149].) We cannot say cross-examination of Johnson in these circumstances would be of marginal utility.

Instead, there would be great utility in testing Johnson's testimony by cross-examination. It could establish or refute his general credibility. Johnson could be considered even less reliable than the average citizen because he initially was uncooperative with the police. He also failed to appear for trial, even when he was subpoenaed. The fact Johnson was riding his bicycle in an alley at 1:00 a.m. to buy "candy" (which may or may not be a "narcotics term") raises questions about his credibility.

Defense counsel could also question him about the conditions of the shooting and his ability to see, perceive, and identify the shooter. (See *Ohio v. Roberts, supra,* 448 U.S. at p. 71 [100 S.Ct. at pp. 2541-2542] [a purpose of cross-examination is to challenge whether the declarant accurately remembers the event].) Defense counsel could explore Johnson's previous encounter with Mad Ball and whether Johnson knew the other persons named Mad Ball. Defense counsel could question Johnson about any past acts or criminal conviction that might be relevant to his credibility. Defense counsel could question Johnson as to his mental state at the time he made the hearsay statement and the impact his medication and pain had on his ability to recall events and accurately relate them to the officers.

In this particular case, we take little comfort from the fact the statement was made to a peace officer or that this particular statement was recorded. While it is true filing a false police report may subject one to criminal sanction (see *People v. Hernandez, supra,* 71 Cal.App.4th at p. 424, fn. 6*)*, that alone does not establish the statement is trustworthy. Many people lie to the police. There is no showing in this record that, due to his background or culture, Johnson was unlikely to be one of those people. Further, nothing in the record establishes Johnson knew his statement was being recorded.

In *Coy v. Iowa* (1988) 487 U.S. 1012 [108 S.Ct. 2798, 101 L.Ed.2d 857], Justice Scalia discussed the importance of the confrontation clause to fairness; it is easier to lie behind someone's back than to his face. ■ The confrontation clause provides two types of protection to a criminal defendant: the right to confront his accuser and the right to conduct cross-examination. (*Id.* at p. 1017 [108 S.Ct. at p. 2801].) In discussing the roots of the confrontation clause, Justice Scalia quoted a 100-year-old case, *Kirby v. United States* (1899) 174 U.S. 47, 55 [19 S.Ct. 574, 577, 43 L.Ed. 890]: "[A] fact which can be primarily established only by witnesses cannot be proved against an accused . . . except by witnesses who confront him at the trial, upon whom he can look while being tried, whom he is entitled to cross-examine, and whose testimony he may impeach in every mode authorized by the established rules governing the trial or conduct of criminal cases." ■ Here, on the key fact of the case—the identity of the shooter—defendant was denied his constitutional right to confront and cross-examine the

man whose testimony sent him to prison, without any evidence that man's testimony was particularly worthy of belief. We cannot find the admission of this evidence was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 828, 17 L.Ed.2d 705, 24 A.L.R.3d 1065].) We must reverse defendant's convictions for attempted murder and assault with a firearm and remand for a new trial.

## DISPOSITION

Defendant's convictions for attempted murder and assault with a firearm and the related enhancement findings are reversed and remanded for retrial. In all other respects the judgment is affirmed.

Morrison, Acting P. J., and Kolkey, J., concurred.