Filed 1/14/14  P. v. Desales CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055220 |
| v. | (Super.Ct.No. RIF153580) |
| DANIEL DESALES, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Helios (Joe) Hernandez, Judge.  Affirmed with directions.

Tonja R. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lilia E. Garcia and Kristine A. Gutierrez, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Daniel Desales appeals following his conviction for the first degree murder of Marcos Hernandez and for active participation in a criminal street gang. He contends that the trial court erred in admitting evidence of prior criminal acts because it was not relevant to a purpose sanctioned by Evidence Code section 1101, subdivision (b), (hereafter cited as Evidence Code section 1101(b)). He also contends, and the Attorney General agrees, that his three-year sentence for participation in a criminal street gang must be stayed pursuant to Penal Code section 654.[1]

We conclude that the evidence of prior criminal acts was properly admitted. Accordingly, we will affirm the judgment. We agree with the parties, however, that section 654 precludes imposition of an unstayed sentence on the criminal street gang participation count.

<u>PROCEDURAL HISTORY</u>

The information charged in count 1 that on or about November 28, 2009, defendant murdered "John Doe," and in count 2 that defendant was an active participant in a criminal street gang. (§§ 187, subd. (a), 186.22, subd. (a).) As to count 1, the information alleged that defendant personally used a knife (§ 12022, subd. (b)(1)) and that the crime was committed in association with or for the benefit of a criminal street gang (§ 186.22, subd. (b)).

A jury found defendant guilty on both counts and fixed the degree on count 1 as first degree murder. The jury found the enhancing allegations true.

---

[1] All further statutory citations refer to the Penal Code unless another code is specified.

On December 9, 2011, the court sentenced defendant to 25 years to life on count 1, consecutive to a term of one year for the weapon enhancement and to a term of three years on count 2. The court stayed imposition of sentence on the gang enhancement. On that same date, defendant filed a notice of appeal.

FACTS

*The Charged Offenses.*

Defendant and his older brother Ricardo, or Ricky, were members of an Orange County gang called Anaheim FOLKS.[2] In 2009, when the offense occurred, defendant was 16. Their family had moved to Riverside several months earlier to get away from the gang environment.

Dereck Carrizoza lived across the street and hung out with the Desales brothers almost every day since the Desales family had moved there. Defendant had told him that he was in the FOLKS gang and that his moniker was Trigger; Ricky's moniker was Drowsy.

On November 28, 2009, Marcos Hernandez came to Carrizoza's house to hang out. Hernandez, known as "Esse Chubs," was an Orange County gang member. He was six feet tall and weighed 244 pounds, and at the time of his death, his blood-alcohol level was 0.12 percent. He was significantly larger than defendant and his brother.

When Hernandez arrived at the house with Carrizoza's friend Alex Lopez and two girls, defendant and another friend, Brandon Perales, were outside. Lopez introduced

---

[2] "FOLKS" stands for "Family of Latin Kings Sureno."

Hernandez to defendant as "Marcos." Defendant responded that he was Trigger from Anaheim FOLKS. Defendant thought Hernandez looked like a gang banger, and testified that it is normal to introduce oneself to a gang banger that way, i.e., using your gang moniker and affiliation. Defendant's manner was not confrontational. Hernandez replied, "I'm Esse Chubs from Eastside Garden Grove." Although the two gangs apparently got along with one another, defendant said something disparaging about a third Orange County gang, ACL. Hernandez told defendant that his cousins belonged to ACL. He apparently felt that defendant had disrespected his cousins by disparaging their gang. He was angry and wanted to fight.

Defendant agreed to fight, but said he needed to go to the bathroom first. He went into his house and told his brother that someone outside wanted to fight. Meanwhile, Carrizoza, Perales, Lopez and the two girls were trying to persuade Hernandez not to fight. However, Hernandez was drunk and belligerent, and appeared to get angrier and angrier. Carrizoza told police that Hernandez was in a rage.

Ricky went outside to see what was happening. He testified that defendant did not tell him that Hernandez was from Eastside Garden Grove. Hernandez asked Ricky if he was going to fight him. Ricky asked why they should fight, since they didn't even know each other and their gangs got along. Hernandez said he wanted to fight because Ricky and defendant were from a gang he didn't like. Hernandez kept getting angrier and angrier. He kept challenging Ricky to a fight, and called Ricky names, such as "bitch" and "pussy," trying to goad Ricky into fighting him. Ricky told Hernandez three or four times that he wasn't going to fight, but then finally said, "Well, fuck you, then, FOLKS,"

4

or words to that effect. Hernandez, who had his hands at his sides, said, "F you, FOLKS," and then punched Ricky two or three times on the left side of his face. Ricky denied having made a reference to FOLKS, and said that Hernandez sucker punched him three times in the face.

Ricky fell to the ground. He appeared to be stunned, although not unconscious. Defendant, who had come out of the house, walked toward Hernandez after Ricky fell to the ground. Hernandez walked about 10 feet away from Ricky and toward defendant and said, "You're next," and "Oh, are you going to get fucked up next or what?" He put up his fists. Hernandez did not appear to have a weapon and did not tell defendant that he had a weapon. Before Hernandez hit or tried to hit him, defendant ran toward him and made a quick jabbing motion. Hernandez staggered several steps and then fell.

It was not immediately obvious that Hernandez had been stabbed. Ricky kicked Hernandez several times before he realized Hernandez was seriously hurt. Lopez yelled that Hernandez's shirt was all wet, and then "there [was] just blood everywhere." Someone called 911. Carrizoza and Ricky both asked defendant why he had done it and said he had gone too far. Ricky asked, "What's wrong with you?" Defendant did not answer. He looked shocked or numb, as though he was wondering what he had just done. While they waited for an ambulance, both Ricky and defendant, along with their father, tried to give Hernandez first aid.

Defendant admitted having stabbed Hernandez but said he did not do it intentionally. Defendant testified that he was walking toward his brother, who was on the ground, when Hernandez took a couple of swings at him. He was afraid that Hernandez

5

was going to knock him out, too. Hernandez was drunk and in a rage and wasn't going to stop. Defendant "swung" the knife at Hernandez only to fend him off; he did not intend to hurt or kill him. He testified that he did not have time to think, that he only reacted to protect himself.

The knife was never found, but defendant described it as a switchblade knife with a four-inch blade. This was consistent with the autopsy results, which showed that Hernandez was stabbed in the chest to a depth of four and a half to five and a half inches, puncturing his aorta and pericardial sac. Heavy bleeding into the pericardium prevented his heart from functioning. The cause of death was a stab wound to the chest.

A gang expert testified that Anaheim FOLKS qualified as a criminal street gang for purposes of section 186.22, subdivisions (a) and (b). He also gave his opinion that defendant was an active member of Anaheim FOLKS and that he had acted for the benefit of his gang in the charged homicide.

<u>DISCUSSION</u>

1.

EVIDENCE OF DEFENDANT'S PRIOR CRIMINAL ACTS

WAS PROPERLY ADMITTED

*Background.*

Before trial, the prosecution asked to be allowed to present evidence that defendant had committed one prior gang-related stabbing and had displayed a knife in

6

another gang-related incident. As represented by the prosecutor,[3] the first incident occurred on November 19, 2007. In that incident, defendant and his brother had gone to Magnolia High School in Anaheim to pick up defendant's girlfriend. Four members of a rival gang insulted defendant's gang and challenged him and his brother to a fight.[4] Defendant tried to avoid a fight by telling the rival gang members that he did not want trouble. The rival gang members continued their barrage of insults and challenges. One of the rival gang members threw a tennis ball at defendant, striking him in the face. Defendant responded by yelling out his gang name and picking up "some sort of flag pole," which he swung at the rival gang members. Some of the rivals also picked up flag poles. Arguing, posturing and shoving by both groups ensued. Defendant ultimately pulled out a knife and stabbed a rival gang member in the chest or stomach area. That person survived.

Defendant later told police that he took out his knife before any punches were thrown, both because he wanted the others to see that "he was down to use it," and because he was outnumbered. He said that during a fight, he would take out anything he had that could be used as a weapon, even a pencil. He said that as a member of FOLKS, he was expected to stand his ground and not back down, and also to provide backup for a fellow FOLKS member.

---

[3] In determining whether the trial court abused its discretion, we consider only the facts known to the court at the time it made its ruling. (*People v. Hernandez* (1999) 71 Cal.App.4th 417, 425 [Fourth Dist., Div. Two].)

[4] Defense counsel informed the court that there were eight to 10 rival gang members in that incident, not four.

The second incident took place on February 28, 2008, at Orange View Junior High School in Anaheim. In that incident, defendant challenged J. R. to fight. Defendant and some of his fellow gang members were upset with J. R. because he had identified them to the police following an incident in November 2007 in which defendant and other FOLKS members beat and kicked him. Defendant and his fellow gang members were arrested as a result of that incident, and defendant received a juvenile adjudication. After that incident, defendant and his brother repeatedly went to J. R.'s school, called him a snitch, and threatened to beat him up for being a rat. On February 28, defendant and his brother called J. R. a rat and challenged him to fight. J. R.'s older cousin, who had come to walk J. R. home from school, stepped in to protect him. They noticed that defendant had a knife. They ran away and called police.

The prosecutor argued that both incidents were relevant to prove that defendant acted intentionally when he stabbed Hernandez. She argued that they were also relevant to prove premeditation and deliberation, lack of mistake or accident, and motive, as well as to prove that defendant was a gang member and to establish a pattern of criminal gang activity. She also argued that the incidents were admissible to impeach defendant's brother, who was involved in both incidents.

Defense counsel objected. He argued that it was not necessary to prove defendant's gang membership because he planned to admit that. He also stated that defendant was claiming self-defense. He argued that the November 2007 incident was not relevant to prove that defendant acted with the intent to kill because the victim did not die, and because defendant was never charged with an assaultive crime. Rather, in a

8

proceeding in juvenile court, he had admitted to active gang participation and possession of a knife.[5] Because there was no evidence of specific intent to kill in the prior incidents, he contended, that evidence had no tendency in reason to prove that he acted with the intent to kill in the charged offense.

The prosecutor responded that the prior incidents were relevant to whether defendant had a good-faith belief in the need to defend himself. She also contended that the first incident showed that whenever defendant was faced with aggression from a rival gang member, his response was to go directly to deadly force.

The court ruled that both incidents were admissible solely on the issue of defendant's intent. The court held that under Evidence Code section 352, the probative value of the evidence outweighed its prejudicial effect. Defendant now contends that this was an abuse of discretion.

*The Applicable Law.*

Evidence that the defendant committed an uncharged offense is admissible where it is relevant to prove a disputed material issue in the current case, unless its probative value is substantially outweighed by the probability that its admission would create substantial danger of undue prejudice, of confusing the issues, or misleading the jury. (Evid. Code, §§ 352, 1101(b); *People v. Ewoldt* (1994) 7 Cal.4th 380, 393, 404 (*Ewoldt*), superseded by statute on another ground as stated by *People v. Britt* (2002) 104

---

[5] The prosecutor pointed out that in fact defendant was charged with a violation of Penal Code section 245, assault with a deadly weapon or by means of force likely to produce great bodily harm.

9

Cal.App.4th 500, 505.) Rulings made under Evidence Code sections 1101 and 352 are reviewed for abuse of discretion. (*People v. Kipp* (1998) 18 Cal.4th 349, 371.) A court abuses its discretion when its ruling "'falls outside the bounds of reason.' [Citation.]" (*Ibid.*) Stated another way, an appellate court will reverse a trial court's exercise of discretion to admit evidence "only if the probative value of the evidence clearly is outweighed by its prejudicial effect." (*People v. Valdez* (2012) 55 Cal.4th 82, 133, internal punctuation and citations omitted.)[6]

*Defendant's Contentions*.

Defendant contends that neither of the prior incidents was sufficiently similar to the charged offense to be probative of his intent to kill or of premeditation and deliberation in the instant case, because no one was killed in either prior incident. For that reason, he contends that it was an abuse of discretion to admit the evidence of the prior incidents.

In a case where the defendant's intent is a material issue but the evidence as to his intent is ambiguous, evidence that the defendant committed crimes other than those currently charged may be admissible as circumstantial evidence of the intent with which he acted in committing the charged offense. (*People v. Robbins* (1988) 45 Cal.3d 867, 879 (*Robbins*), superseded by statute on another ground as stated in *People v. Jennings*

---

[6] As defendant points out, if the ruling depended on the trial court's interpretation of the Evidence Code, that is a question of law which we review independently. (*People v. Walker* (2006) 139 Cal.App.4th 782, 795.) However, defendant does not contend that the trial court misinterpreted either Evidence Code section 1101(b) or Evidence Code section 352. Rather, he contends only that the trial court abused its discretion.

10

(1991) 53 Cal.3d 334, 387, fn. 13.) Courts have "long recognized 'that if a person acts similarly in similar situations, he probably harbors the same intent in each instance' [citations], and that such prior conduct may be relevant circumstantial evidence of the actor's most recent intent." (*Robbins*, at p. 879.) The rationale underlying this recognition, called the doctrine of chances, is stated as "'that logical process which eliminates the element of innocent intent by multiplying instances of the same result until it is perceived that this element cannot explain them all. . . . [S]imilar results do not usually occur through abnormal causes; and the recurrence of a similar result (here in the shape of an unlawful act) tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, i.e., criminal, intent accompanying such an act; and the force of each additional instance will vary in each kind of offense according to the probability that the act could be repeated, within a limited time and under given circumstances, with an innocent intent.' [Citations.]" (*Id*. at pp. 879-880.)

In order to be relevant to prove intent, the charged and uncharged crimes must be sufficiently similar to support a rational inference that the defendant probably harbored the same intent in each instance. (*Ewoldt*, *supra*, 7 Cal.4th at p. 403.) Defendant focuses on the fact that no one died in either prior incident to argue that the prior incidents were not sufficiently similar to the charged offense to be probative on the question of his intent to kill. We disagree.

11

The November 2007 incident, in which defendant stabbed a rival gang member in the chest or abdomen, is circumstantial evidence directly relevant to defendant's intent to kill in the charged incident. Stabbing a person in a highly vulnerable area of the body—in the chest or the abdomen, as opposed to an arm or a leg—is circumstantial evidence of an intent to kill. (*People v. Bolden* (2002) 29 Cal.4th 515, 561 [stabbing victim in the chest was indicative of intent to kill]; *People v. Moore* (2002) 96 Cal.App.4th 1105, 1114 [stabbing in abdomen, same].) This is true even if the victim did not die: in *People v. Houston* (2012) 54 Cal.4th 1186, a case involving multiple murders and attempted murders, the court held that shooting toward a victim at close range in a manner that could have inflicted a mortal wound if the shot had been on target supports the inference of intent to kill; the court held that it is "not dispositive" that some victims did not die. (*Id.* at p. 1218.) Accordingly, the fact that in the November 2007 incident defendant stabbed the victim in a vulnerable area of his body supports the inference that he intended to kill that person, even though he did not succeed, and therefore has probative value as to his intent in the current case.

However, the evidence as to defendant's intent in the prior incident was ambiguous because the wound was inflicted during a melee involving between six and 12 people in which defendant might have been acting in self-defense, or at least in the perceived need for self-defense. The prosecutor's description of the incident made it clear that defendant was not the initial aggressor and that defendant may have honestly believed in the need to defend himself against a large group of adversaries who were armed with flag poles. Because of this ambiguity, the probative value of the

November 2007 incident is limited with respect to the specific intent to kill.  The February 2008 incident has even less probative value because although defendant was armed with a knife, the incident ended before he attempted to make any use of the knife.

Nevertheless, both prior incidents were relevant to disprove facts which might have negated defendant's intent to kill.  When a defendant asserts that he acted in the real or perceived need for self-defense, a prior incident may be admissible to show that the defendant did not honestly believe that deadly force was required in order to defend himself.  (*People v. Demetrulias* (2006) 39 Cal.4th 1, 14.)  Here, the prosecutor argued that the similarity of defendant's actions under similar circumstances, i.e., that any time he was faced with aggression, he pulled out a knife and went directly to deadly force, negated his claim that he held a good-faith belief in the need to defend himself with potentially deadly force.  Both of the prior incidents had substantial probative value on that issue.

The evidence was also relevant to prove that defendant stabbed Hernandez intentionally, rather than accidentally.  Defendant told police following the November 2007 incident that any time he is faced with gang aggression, he will use any weapon that is available to him.  That statement tends to negate the possibility that either the November 2007 stabbing or the charged offense happened accidentally, when defendant was trying to fend off an assailant.  "[W]hen a defendant admits committing an act but denies the necessary intent for the charged crime because of mistake or accident, other-crimes evidence is admissible to show absence of accident."  (*People v. Whisenhunt* (2008) 44 Cal.4th 174, 204.)  One accidental stabbing during a gang fight might be

13

plausible; two such accidents are far less so: "[S]imilar results do not usually occur through abnormal causes; and the recurrence of a similar result . . . tends (increasingly with each instance) to negative accident or inadvertence or self-defense or good faith or other innocent mental state . . . .' [Citations.]" (*Robbins*, *supra*, 45 Cal.3d at pp. 879-880.)

For both of these reasons, the court did not abuse its discretion in finding the evidence of both prior incidents relevant to defendant's intent.

It was also not an abuse of discretion to determine that the evidence had substantial probative value which outweighed its prejudicial effect. For purposes of Evidence Code section 352, prejudice means evidence that uniquely tends to evoke an emotional bias against the defendant as an individual, with very little effect on issues. (*People v. Valdez*, *supra*, 55 Cal.4th at pp. 133, 134.) Defendant asserts that the evidence was prejudicial, in the sense that there was a great danger that the jury would view it as evidence of his propensity to engage in gang-related confrontations and to use a knife in those confrontations, and/or "to create the mistaken inference that because someone had acted in self-defense in the past, he could not act in self-defense in the present case."

As to the latter contention, we see no likelihood whatsoever that in the absence of such a suggestion jurors would draw that inference.[7] As to the former contention, it was not an abuse of discretion for the trial court to conclude that the evidence was not substantially likely to inflame the jury and evoke an emotional bias against defendant.

_____

[7] And, in fact, the prosecutor did not make that argument to the jury.

14

(*People v. Valdez*, *supra*, 55 Cal.4th at p. 134.) Both the November 2007 incident and the charged offense showed defendant, who was not the aggressor and who tried to avoid a fight, stabbing someone under circumstances in which he was at least arguably entitled to claim that he had a good-faith belief in the need to defend himself—in the 2007 incident because he and his brother were outnumbered by their rival gang members, some of whom were attacking them with flag poles, and in the charged offense because Hernandez was older, bigger, drunk and enraged, and had just apparently knocked out defendant's brother. The February 2008 incident was also not likely to produce an emotional bias because in that incident, even though defendant was the aggressor, he did not actually use the knife. Accordingly, we cannot say that the probative value of the evidence was clearly outweighed by its potential for prejudice, within the meaning of Evidence Code section 352. (*People v. Valdez*, *supra*, 55 Cal.4th at p. 133.)

For all of the foregoing reasons, the evidence of the two prior incidents was properly admitted.[8]

2.

THE SENTENCE ON COUNT 2 MUST BE STAYED

Defendant was convicted in count 2 of active participation in a criminal street gang, in violation of section 186.22, subdivision (a). That statute applies to "[a]ny person

---

[8] Defendant also contends that the admission of this evidence violated his federal constitutional right to due process of law and a fair trial. He did not make that objection in the trial court. In any event, because we have concluded that the evidence was properly admitted under Evidence Code section 1101(b), his constitutional claims, even if they are cognizable on appeal, fail. (See *People v. Valdez*, *supra*, 55 Cal.4th 134.)

who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang." (§ 186.22, subd. (a).) As the statutory text indicates, the gang crime has three elements: (1) active participation in a criminal street gang, in the sense of participation that is more than nominal or passive; (2) knowledge that [the gang's] members engage in or have engaged in a pattern of criminal gang activity; and (3) the person willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang. (*People v. Mesa* (2012) 54 Cal.4th 191, 197.)

Here, the court instructed the jury that "[f]elonious criminal conduct" means "committing or attempting to commit any of the following crimes: murder or manslaughter." Defendant contends that because, pursuant to the court's instruction, the charged offense of murder was the sole basis for that element of the violation of section 186.22, subdivision (a), section 654 precludes imposition of an unstayed sentence on count 2. The Attorney General agrees.

Penal Code section 654, subdivision (a), provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Section 654 allows multiple convictions arising out of a single act or omission, but bars multiple punishment for those convictions. Execution of the sentence for one of the offenses must be stayed. (*People v. Mesa*, *supra*, 54 Cal.4th at p. 195.)

16

In *People v. Mesa*, *supra*, 54 Cal.4th 191, the California Supreme Court held that if a charged felony is used to satisfy an element of section 186.22, subdivision (a), section 654 precludes imposition of an unstayed sentence on the gang participation count. (*People v. Mesa*, at pp. 197-198, 200-201.)  Here, the murder and manslaughter instructions given to the jury pertained solely to the charged offense.  Accordingly, because the murder of Hernandez was used to satisfy an element of the gang participation count, it was error to impose any unstayed sentence on count 2.  We will direct the trial court to correct the sentence accordingly.

## DISPOSITION

The matter is remanded to the superior court for further sentencing proceedings. The superior court is directed to stay imposition of sentence on count 2 pursuant to Penal Code section 654.  The superior court is further directed to determine the appropriate sentence enhancement to be imposed pursuant to Penal Code section 186.22, subdivision (b), which the court previously stayed in light of the sentence imposed on count 2.

The judgment is otherwise affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER

Acting P. J.

We concur:

RICHLI

J.

MILLER

J.

17