[No. B222971. Second Dist., Div. Six. Dec. 24, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
ROOSEVELT HOLMES, Defendant and Appellant.

432

**COUNSEL**

Sara H. Ruddy, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Joseph P. Lee and Sarah J. Farhat, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**COFFEE, J.**[*]—Roosevelt Holmes appeals from a judgment after conviction by jury for murder (Pen. Code, §§ 187, subd. (a), 189),[1] first degree residential burglary (§ 459), and first degree residential robbery (§ 211). The jury found true allegations that appellant committed the burglary and robbery counts with infliction of great bodily injury (§ 12022.7, subd. (a)), that he committed each count with personal use of a deadly and dangerous weapon (§ 12022, subd. (b)(1)), and that he suffered a prior strike conviction (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)). Appellant admitted that he had served nine prior prison terms. (§ 667.5.) The court sentenced appellant to life in prison without parole.

Appellant contends that his right to confrontation under the Sixth Amendment of the United States Constitution was violated because the testifying DNA experts did not personally perform all of the testing upon which they relied in reaching their opinions. We reject the contention. The forensic analysis relied on by the DNA experts in this case was not "testimonial" under any formulation of that term yet adopted by a majority of the United States Supreme Court justices or by the California Supreme Court. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Gretchen Lewis was killed in her apartment. She was strangled and stabbed. At her apartment, police collected gloves, a knife, and samples of a bloodstain, among other things. The coroner collected blood and fingernail scrapings from Lewis's body. Police also collected DNA samples from a friend who reported Lewis missing (James Marquez) and, later, from appellant because Marquez said he had seen appellant in Lewis's apartment about two weeks before she was killed.

The collected materials were subjected to DNA analysis at the Los Angeles Police Department's Scientific Investigation Division (SID) and at two private

---

[*]Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

[1] All statutory references are to the Penal Code unless otherwise stated.

laboratories run by Orchid Cellmark Laboratories (Cellmark). Cellmark's laboratory in Texas tested the knife handle. Its laboratory in Pennsylvania tested the nail scrapings, Lewis's blood and Marquez's sample. SID tested the glove, the knife handle and appellant's sample.

Three supervising criminalists from these three labs offered opinions at trial, over defense objection, based on DNA tests that they did not personally perform. They referred to notes, DNA profiles, tables of results, typed summary sheets, and laboratory reports that were prepared by nontestifying analysts. None of these documents was executed under oath. None was admitted into evidence. Each was marked for identification and most were displayed during the testimony. Each of the experts reached his or her own conclusions based, at least in part, upon the data and profiles generated by other analysts.

### Moss—Knife Handle

Amber Moss, a senior forensic scientist at the Texas Cellmark laboratory,[2] offered the opinion that a DNA sample taken from the handle of the knife contained a mixture of DNA that matched a combination of appellant's and Lewis's DNA profiles. In reaching this conclusion, Moss relied on raw data, notes, and genetic analysis generated by other analysts at her laboratory and at Cellmark's Pennsylvania laboratory.

As a technical reviewer, it was Moss's job to review the paperwork associated with each step of testing these samples to ensure that a generally accepted protocol was followed. After verifying that protocol was followed, she looked at the data and made sure she was in agreement with the conclusions of the person who generated the report. The steps of sample testing are (1) extracting DNA from a sample; (2) quantifying the amount of DNA extracted; (3) amplifying the sample by copying the extracted DNA; (4) running the sample on a genetic analyzer machine, which generates a profile by type tags on the DNA with a laser; (5) comparing the resulting profile with the profile of known samples to determine if they match; and (6) performing a statistical analysis by entering the profiles into a software program. Moss had personally performed these steps thousands of times on other samples.

Appellant's counsel objected to Moss's testimony on the grounds that it was hearsay and violated his constitutional right to confront witnesses against him because Moss relied on tests that she did not personally perform. Appellant's counsel cited *Melendez-Diaz v. Massachusetts* (2009) 557 U.S.

---

[2] Each of the testifying criminalists had changed employment by the time of trial. We refer to their occupations at the time the genetic testing was conducted and reviewed.

305 [174 L.Ed.2d 314, 129 S.Ct. 2527] (*Melendez-Diaz*). The trial court overruled the objection and granted appellant's counsel's request for a continuing objection.

### *Word—Fingernail Scrapings*

Charlotte Word, a technical reviewer at Cellmark's Pennsylvania laboratory, offered the opinion that a sample from the fingernail scrapings taken from Lewis's body contained a mixture of DNA from two individuals. The primary donor was Lewis, and the other was a male, not Marquez. (Appellant was not yet a suspect when Word's laboratory performed its tests.) In reaching her opinion, Word relied on the analysis of blood and fingernail scrapings performed at her laboratory by others. Like Moss, she acted as a reviewer and checked all the paperwork for each step of testing to ensure compliance with protocol before reaching her own conclusions based on the data.

Appellant's counsel objected to Word's testimony by saying, "Foundation and hearsay, ongoing objection." The trial court overruled the objection and said, "It is understood."

### *Matthies—Glove, Fingernail Scrapings, Appellant's Sample*

Carl Matthies, a criminalist at SID, opined that a DNA sample taken from one of the gloves matched appellant's DNA profile, that appellant could not be ruled out as a donor to the sample taken from Lewis's fingernails, and that blood that he found on the outside of the glove matched Lewis's DNA profile. Matthies personally collected evidence at the crime scene. He personally performed the tests on the glove and on appellant's sample. He also relied on the tests performed on Lewis's blood and fingernail scrapings by Cellmark's Pennsylvania laboratory.

Appellant's counsel objected to Matthies's testimony "because Matthies didn't actually do the testing." The trial court overruled the objection and noted, "the running objection is known."

## DISCUSSION

### *Preservation of Objections*

We first reject respondent's contention that appellant forfeited his confrontation objections. In order to preserve an evidentiary objection on appeal, a party must make a timely objection in the trial court "so stated as to make

clear the specific ground of the objection or motion." (Evid. Code, § 353, subd. (a).) The purpose of this rule is to give the trial court a concrete legal proposition to pass on, to give the opponent an opportunity to cure the defect, and to prevent abuse. (*People v. Partida* (2005) 37 Cal.4th 428, 434 [35 Cal.Rptr.3d 644, 122 P.3d 765].) In some instances, a hearsay objection will not be adequate to preserve a confrontation clause objection. (*People v. Redd* (2010) 48 Cal.4th 691, 730 [108 Cal.Rptr.3d 192, 229 P.3d 101].) But where, as here, the context makes clear that the court and opposing counsel were aware that the confrontation clause was the basis of the hearsay objection, the constitutional objection is preserved. (*People v. Gutierrez* (2009) 45 Cal.4th 789, 809 [89 Cal.Rptr.3d 225, 200 P.3d 847].)

Defense counsel expressly raised a confrontation clause objection to the testimony of Moss, citing *Melendez-Diaz*. He was granted a running objection, which he renewed with each witness, using the shorthand statements "hearsay," and "ongoing." In context, the specific ground for these objections was clear. Appellant's confrontation clause objection was not forfeited.

### Confrontation Clause Analysis

■ Appellant contends that the experts' reliance on notes, DNA profiles, tables of results, typed summary sheets, and laboratory reports prepared by others violated his confrontation rights because the documents were prepared for possible use at a criminal prosecution and were therefore within the core class of statements that the United States Supreme Court classified as "testimonial" in *Crawford v. Washington* (2004) 541 U.S. 36, 59 [158 L.Ed.2d 177, 124 S.Ct. 1354] (*Crawford*). We disagree. That a statement is prepared for use at trial is not alone sufficient to render it "testimonial" under any formulation of that term yet adopted by a majority of the United States Supreme Court justices or the California Supreme Court. It must also be "formalized." (*People v. Lopez* (2012) 55 Cal.4th 569, 582, 584 [147 Cal.Rptr.3d 559, 286 P.3d 469] (*Lopez*).) None of these documents was an affidavit or other formalized testimonial material.

■ "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." (U.S. Const., 6th Amend.) This clause precludes admission of any "testimonial" out-of-court statement offered against a criminal defendant, unless the witness is unavailable at trial and the defendant had a prior opportunity for cross-examination. (*Crawford, supra,* 541 U.S. at p. 59.) In *Crawford*, an unconfronted statement made by the defendant's wife in response to custodial interrogation was testimonial and the defendant's right to confront witnesses against him was violated by its admission.

The *Crawford* court did not define the term "testimonial," and the United States Supreme Court has still not agreed upon a definition. The court decided that, whatever the definition, a core class of formalized "testimonial" hearsay includes prior preliminary hearing or grand jury testimony (*Crawford, supra,* 541 U.S. at pp. 51, 68); statements made in response to police interrogations if there is no ongoing emergency and the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution (*Davis v. Washington* (2006) 547 U.S. 813, 822 [165 L.Ed.2d 224, 126 S.Ct. 2266]; *Michigan v. Bryant* (2011) 562 U.S. ___ [179 L.Ed.2d 93, 114–115, 131 S.Ct. 1143]); and sworn affidavits that are admitted in lieu of live testimony (*Melendez-Diaz, supra,* 557 U.S. at p. 310 [forensic analyst's affidavit within core class]). Beyond this list, a majority of the justices of the United State Supreme Court have never agreed upon a formulation for determining which out-of-court statements are "testimonial." (See *People v. Dungo* (2012) 55 Cal.4th 608, 617 [147 Cal.Rptr.3d 527, 286 P.3d 442] (*Dungo*).)

In *Melendez-Diaz,* a chemical analyst's affidavit was admitted as a substitute for live testimony to prove an element of the drug trafficking offense: that the substance the defendant possessed was cocaine. Five justices agreed that the certification was "testimonial" because affidavits are within the core class of testimonial materials covered by the confrontation clause. (*Melendez-Diaz, supra,* 557 U.S. at p. 310.)

In *Bullcoming v. New Mexico* (2011) 564 U.S. ___ [180 L.Ed.2d 610, 131 S.Ct. 2705], five justices agreed that a certified blood-alcohol report prepared by a nontestifying lab analyst was testimonial. (*Id.* at pp. ___, ___ [180 L.Ed.2d at pp. 616, 624, 131 S.Ct. 2717].) Justice Thomas was among them, but joined solely because the report included a signed "Certificate of Analyst," as he later explained in *Williams v. Illinois* (2012) 567 U.S. ___ [183 L.Ed.2d 89, 134, 132 S.Ct. 2221] (*Williams*) (conc. opn. of Thomas, J.).

In *Williams,* five justices agreed that the uncertified results of a DNA analysis, performed by nontestifying Cellmark analysts, were nontestimonial. (*Williams, supra,* 567 U.S. at p. ___ [183 L.Ed.2d at p. 99, 132 S.Ct. 2228].) Justice Thomas concurred solely because the uncertified analysis lacked the requisite formality and solemnity to be considered testimonial. (*Id.* at pp. ___, ___ [183 L.Ed.2d at pp. 129, 133, 132 S.Ct. 2255, 2259] (conc. opn. of Thomas, J.).) He reaffirmed that he would not join in any definition of "testimonial" that reaches beyond " ' "formalized testimonial materials," ' " such as depositions, affidavits, and prior testimony, or statements." (*Ibid.*)

The California Supreme Court has extracted two critical components from the "widely divergent" views of the United States Supreme Court

justices. (*Dungo, supra*, 55 Cal.4th at pp. 618, 619; see *Lopez, supra*, 55 Cal.4th at pp. 581–582.) To be "testimonial," (1) the statement must be "made with some degree of formality or solemnity," and (2) its "primary purpose" must "pertain[] in some fashion to a criminal prosecution." (*Dungo*, at p. 619; *Lopez*, at pp. 581–582.) Thus, the *Dungo* court recently concluded that factual observations by a nontestifying pathologist about the condition of a body, recorded in an unsworn autopsy report, were not testimonial because they lacked formality and the autopsy report had other purposes aside from criminal investigation. (*Dungo*, at p. 621.) And the *Lopez* court concluded that a lab analyst's unsworn report analyzing machine-generated blood-alcohol concentration data lacked the requisite degree of formality to be testimonial, and the court therefore did not consider the primary purpose of the report. (*Lopez*, at pp. 582, 584.) In *People v. Rutterschmidt* (2012) 55 Cal.4th 650, 661 [147 Cal.Rptr.3d 518, 286 P.3d 435], the court did not decide whether a lab analyst's report was testimonial because overwhelming evidence of guilt rendered any confrontation clause violation harmless beyond a reasonable doubt.

The forensic data and reports in this case lack "formality." They are unsworn, uncertified records of objective fact. Unsworn statements that "merely record objective facts" are not sufficiently formal to be testimonial. (*Dungo, supra*, 55 Cal.4th at p. 619.)

The primary purpose of the materials did "pertain to criminal prosecution" because the recorded procedures were undertaken at the behest of police, using biological material taken from a crime scene to identify a suspect in a murder case. Some of the analysis was performed after appellant was targeted as a suspect. And the reports did not consist solely of machine-generated data. But they lacked formality and this primary purpose is immaterial under *Lopez* and *Dungo*.

It is now settled in California that a statement is not testimonial unless both criteria are met. In *Lopez*, the court concluded that lack of formality alone rendered the blood-alcohol report nontestimonial regardless of its primary purpose. (*Lopez, supra*, 55 Cal.4th at p. 582.) In his dissent, Justice Liu pointed out that the United States Supreme Court has not so held, and he argued that "the proper determination of a statement's formality for purposes of the *confrontation clause* is closely intertwined with the nature and purpose of the process that produced the statement." (*Id.* at p. 594 (dis. opn. of Liu, J.), italics added.) But the majority's opinion is controlling authority in this state and we are compelled to follow it. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

Based upon existing precedent from the California and United States Supreme Courts, we must conclude that the forensic analysis relied on by the

DNA experts in this case was not testimonial and appellant's right to confront witnesses against him was not violated by its admission.

## DISPOSITION

The judgment is affirmed.

Yegan, Acting P. J., and Perren, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 27, 2013, S208254.