Filed 7/14/15  P. v. Amaya CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B257164 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA416070) |
| V. | |
| VICTOR ENRIQUE AMAYA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Craig E. Veals, and Judge.  Affirmed with directions.

Kevin D. Sheehy, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Nima Razfar, Deputy Attorney General, for Plaintiff and Respondent.

_____

Victor Amaya was convicted of residential burglary.  On appeal, he asserts that the trial court erred in failing to strike one statement made by the prosecution's fingerprint examiner.  Affirmed, with directions.

## FACTUAL AND PROCEDURAL HISTORY

Amaya was charged with one count of first-degree residential burglary based on events on April 3, 2013.  At trial, the prosecution presented the testimony of the homeowner, Rina Fernandez Valeriano, who could not identify appellant, and Bolganin Youssef, a forensic print specialist with the Los Angeles Police Department, with respect to the investigation of the burglary.  After conducting a due diligence hearing with respect to the officer who had processed the scene to obtain fingerprints, that witness's testimony from the preliminary hearing was read to the jury.  The prosecution also presented witnesses who testified to the investigation of two uncharged crimes in which Amaya had been identified.

The jury found Amaya guilty, and after a court proceeding with respect to prior convictions, the trial court sentenced Amaya to an aggregate state prison term of 10 years plus 25 years to life, consisting of: Count 1: 25 years to life (Pen. Code, §§ 667, subds. (b)- (i), 1170.12, subds. (a)-(d)), plus two consecutive 5 year enhancements (Pen. Code, § 667, subd. (a)), plus a stayed 5-year enhancement (Pen. Code, §§ 654, 667, subd. (a)).[1]

The information relevant to this appeal concerns only the testimony of Bolganin Youssef.  As a result, we will not discuss the other testimony.

*Testimony of Youssef*

Youssef identified himself as a forensic print specialist with the Los Angeles Police Department(LAPD), with 13 years experience working with fingerprints.  He described for the jury his training and education, as well as the nature of fingerprints and

---

[1]    While the court stayed the third enhancement under Penal Code Section 654, because two of the felonies had been tried together, only two enhancements should have been imposed.  (Pen. Code, § 667 (a).)

fingerprint analysis. In describing the procedures he follows at LAPD, he testified that following his conclusion that he could make an identification based on a match of the fingerprints, his work was verified; specifically, he stated "Every ID that we get has to be verified by two other experts to make sure that everything—my conclusion is correct."

In this case, Youssef testified that he received a print exemplar, which he compared to the latent prints taken from the scene. He also took the fingerprints of Amaya in court, which he compared to the exemplar print, and concluded they were the same.

On cross-examination, Youssef was asked numerous questions about his practices, as well as his actions in this case. He confirmed that, of the latent prints taken at the scene, one fingerprint matched Amaya, but that two palm prints and another fingerprint taken at the scene did not. Counsel then asked the witness a series of questions concerning the nature of his conclusions:

MS. BADHAN: Q. Now, when you did your comparison, there wasn't a mathematical formula that you used, correct, in looking at the latent and the exemplar?

YOUSSEF: A: No.

MS. BADHAN: Q: Okay, and you as you said, you don't use a set number of characteristics to determine if there is a match, correct?

YOUSSEF: A: That's correct.

MS. BADHAN: Q: And can that vary between examiner to examiner, right?

YOUSSEF: A: That's correct.

MS. BADHAN: Q: You basically make judgment calls, right?

YOUSSEF: A: It's not a judgment. It's a conclusion. This is my conclusion that those two prints are made by the same person or coming from the same source.

MS. BADHAN: Q: It's a subjective conclusion, correct?

YOUSSEF: A: No, ma'am. It's objective.

MS. BADHAN: Q: But you decide that yourself when you say that you find that match, correct?

3

YOUSSEF:  A:  That is one thing, but my conclusions that are reached aren't subjective and have nothing to do with feeling, but thinking.  You cannot verify feeling.

MS. BADHAN:  Q:  Okay.

YOUSSEF:  A:  My finding here is objective because it was verified by two other examiners.

MS. BADHAN:  Your Honor, my I approach and move to strike?

THE COURT:  You are asking him was it a subjective determination, so your question is:  You do this based on objective factors, correct?

THE WITNESS:  Yes.

Amaya's counsel, outside the presence of the jury, renewed his objection to the witness's statement about the verification of his conclusion, asserting that, under *Crawford v. Washington* (2004) 541 U.S. 36 (*Crawford*), the admission of this statement was improper hearsay.  The court denied the objection, but precluded any future reference to the conclusions of others by the witness.  The statement, and the court's ruling, are the sole issue in this appeal.[2]

## DISCUSSION

Appellant argues that Youssef's statement constituted testimony that two other fingerprint examiners verified his identification opinion, and, as a result, his Sixth Amendment right to confront witnesses was violated.  Respondent asserts that there was no violation because Youssef, the criminalist who performed the analysis at issue in the case, was present in court and subject to cross-examination.  Even if the admission of the statement were error, respondent argues, it was harmless in the absence of any explanation of how the cross-examination of the verifying analysts could have assisted in challenging Youssef's opinion.  We agree that the court did not err, and affirm the conviction.

---

[2]  No further references to this procedure of verification were made at trial, and neither party referred to this testimony in argument to the jury.

4

*Confrontation Clause Jurisprudence*

The Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." (U.S. Const., 6th Amend.) The purpose of that clause is to "ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." (*Maryland v. Craig* (1990) 497 U.S. 836, 845.) "A hearsay statement that otherwise satisfies a statutory exception may be admitted against a criminal defendant without violating the confrontation clause as long as the statement is not testimonial.'" (*People v. Lopez* (2012) 55 Cal.4th 569, 590 (*Lopez*), citing *Crawford.*)[3]

In *Crawford v. Washington, supra,* 541 U.S. at page 59, set forth a general rule that prohibits the prosecution from using testimonial out of court statements unless the witness is unavailable and the defense had a prior opportunity to cross-examine that witness. The Supreme Court did not define "testimonial," leaving later cases to explore the meaning and limits of that concept. In three post-*Crawford* cases, the Court applied the rule without setting forth a clear test to be applied by courts in identifying those statements that are testimonial.[4]

In *Melendez-Diaz v. Massachusetts* (2009) 557 U.S. 305, the prosecution submitted at trial certificates of analysis identifying the substance found in defendant's car as cocaine; the analysts who had performed the testing did not testify. The Court reversed the conviction, finding that the certificates "fell within the "core class of testimonial statements'" under *Crawford*.

In *Bullcoming v. New Mexico* (2011) 564 U.S.__[131 S.Ct.2705, 180 L.Ed.2d 610], a laboratory analysis of defendant's blood alcohol level was introduced without the

---

[3]    For a detailed analysis of the relevant cases and development of this doctrine, see *People v. Barba* (2013) 215 Cal.App.4th 712.

[4]    We note in each case the issue before the court was the admission of documents reporting the laboratory findings of non-testifying analysts.

testimony of the analyst who had performed the testing. Instead, another analyst, who had no role in the testing, testified at trial. The Court again found this to be testimonial and reversed.

Finally, in *Williams v. Illinois* (2012) 567 U.S.__[132 S.Ct. 2221, 183 L.Ed.2d 89], the Court considered the admission of DNA analysis. There, the testifying witness had obtained a report of DNA testing done by another laboratory, and matched it to her own DNA analysis of defendants. The report from the other laboratory was not introduced into evidence. The Court, in three separate opinions, found no confrontation clause violation, although there was no majority rationale for the decision.

*California Cases*

Our Supreme Court began its analysis of *Crawford* in *People v. Geier* (2007) 41 Cal.4th 555. There, a laboratory report prepared by a non-testifying analyst was introduced by the laboratory director. Concluding that the report was "a contemporaneous recordation of observable events rather than the documentation of past events", the Court found that the report was not testimonial. (*Id.* at p. 605.) Thereafter, however, the U.S. Supreme Court decided *Melendez-Diaz*, finding a laboratory report testimonial even if it consisted of a contemporaneous recording of observations.

The California Supreme Court revisited the issue in a trio of cases: *People v. Lopez* (2012) 55 Cal.4th 569; *People v. Dungo* (2012) 55 Cal.4th 608; and *People v. Rutterschmidt* (2012) 55 Cal.4th 650.

In *People v. Lopez*, *supra,* 55 Cal.4th pages 581-582, the issue was the admissibility of a laboratory report analyzing blood alcohol levels, with testimony from a colleague of the analyst. The Court held that there were two critical components indicating that a statement is testimonial: first, "the out-of-court statement must have been made with some degree of formality or solemnity"; and second, "the primary purpose of the statement must pertain in some fashion to a criminal prosecution." The *Lopez* court did not further define the primary purpose analysis, however, as the court concluded that the first test had not been met: "the critical portions of that report were not

6

made with the requisite degree of formality or solemnity to be considered testimonial." (*Ibid.*)

The report at issue consisted of six pages. The first was a log sheet, on which several samples, including defendant's, were listed. The second was a calibration printout, and two other pages were "quality control runs." The remaining pages were computer generated numerical results of the analysis. The machine generated pages, in the view of the court, did not raise confrontation issues because, among other reasons, "a machine cannot be cross-examined." (*People v. Lopez*, *supra,* 55 Cal.4th at p. 583.) The first page, containing handwritten entries, while a more difficult issue, was testimonial in the view of the Court because the persons making the entries had not "signed, certified, or swor[n] to the truth of the contents" (*id*. at p. 584), and it was thus not prepared with the requisite formality.[5]

In *People v. Dungo, supra*, 55 Cal.4th at page 619, a forensic pathologist testified to objective facts recorded in an autopsy which he had not performed, and on the basis of those facts, testified to his own opinion of the cause of death. The autopsy report was not introduced into evidence, and the pathologist who performed the autopsy did not testify. The Court found no Confrontation Clause violation. In its analysis, the Court concluded that the statements at issue were observations about the body, not conclusions about the

---

[5]     There were separate opinions in the case. Justice Werdegar concurred, agreeing that the formality requirements had not been met. Declining to conclude that all forensic laboratory records are testimonial, Justice Werdegar urged "a fair and practical 'Crawford boundary,' that is, a 'logical stopping place between requiring the prosecution to call as a witness one of the laboratory experts who worked on the matter and requiring the prosecution to call *all* of the laboratory experts who did so.'" (*People v. Lopez*, *supra,* 55 Cal.4th at p. 586 quoting *Williams v. Illinois, supra*, 567 U.S.__.) Justice Corrigan concurred separately, relying on the primary purpose prong rather than a formality analysis, and concluding that most of the annotations were conventional business records, not testimonial hearsay. (*People v. Lopez*, *supra,* 55 Cal.4th at pp. 589-591.) Justice Liu dissented, concluding that the process and purpose of the statements offered were the key analysis and that the government involvement and the formality of the process followed did implicate confrontation rights. Justice Liu further concluded that the primary purpose of the analytical report was testimonial. (*Id*. at pp. 600-603.)

cause of death. As records of objective facts, they were less formal than opinions and not testimonial in nature. In addition, because autopsy reports serve purposes other than criminal investigation and prosecution, the Court found the criminal investigation was only one of several purposes for the preparation of the report, not the primary one. (*Id.* at p. 621.)[6]

Finally, in *People v. Rutterschmidt*, *supra,* 55 Cal.4th 650, the Court considered the testimony of a laboratory director concerning testing done by four non-testifying lab analysts, who prepared two reports which were "peer reviewed" and then turned into a final reports. The director reviewed the reports, determined that the analysis had followed procedure, and signed them. The reports were not introduced into evidence. (*Id.* at p. 659.) The Court, however, did not reach the confrontation issue, finding harmless error in light of "overwhelming" evidence of guilt. (*Id.* at p. 661.)

In *People v. Holmes* (2012) 212 Cal.App.4th 431, the court considered the confrontation issue in connection with testimony about DNA analysis. The three criminalists who testified at trial stated opinions based on tests that they had not performed, and reports prepared by other analysts. The documents on which they relied had not been executed under oath and were admitted into evidence. On appeal, appellant asserted that his confrontation rights had been violated because the documents on which the testimony was based had been prepared for possible prosecution and were therefore testimonial. The court disagreed: "The forensic data and reports in this case lack 'formality.' They are unsworn, uncertified records of objective fact. Unsworn statements that 'merely record objective facts' are not sufficiently formal to be testimonial." (*Id.* at p. 438.) Although the court concluded that the primary purpose of the reports did pertain to prosecution, the showing on only one prong of the analysis was insufficient to establish a violation of the appellant's confrontation rights.

---

[6] *Dungo* also generated separate opinions. Justice Werdegar and Justice Chin concurred separately, with joinders in each concurrence by the Chief Justice and Justice Baxter. Justice Corrigan, joined by Justice Liu, dissented, finding both prongs of the test were met.

In this case, Youseff did not rely on the analysis of others, but testified, and was extensively cross-examined, on the work he performed and the basis for his opinion that one of the fingerprints taken at the scene was a match to appellant. He did not rely on the work of others, but performed the relevant analysis and reached the conclusions to which he testified through his own efforts.

As to the work of the unnamed verifying analysts, nothing more is known. The record does not demonstrate that they recorded their observations in any manner; that, if they did so, their statements were sworn or certified; or that there was any intent for their work to form any part of the evidence in the event of a prosecution. As a result, there is no showing of even the level of formality found insufficient in *Holmes*. Thus, even if we were to assume for purposes of this analysis that the primary purpose of the verification procedure did pertain to criminal prosecution, satisfying the second prong of the *Lopez* analysis, there is no evidence on which we can conclude that the first prong was met.

Finally, our conclusion is consistent with *People v. Steppe* (2013) 213 Cal.App.4th 1116. There, the testifying witness explained, without objection, that no report could issue from the laboratory without the work of a reviewer who concurred in the result. Thus, when the witness, who was the reviewer there, testified to her conclusions, the jury knew that the results reached by the original analyst had been the same. (*Id*. at p. 1127.) The court found no confrontation clause violation there, and the results should be no different here where, as in *Steppe*, the initial testimony that verification of any result was required was received without objection. The single statement that was objected to thus added nothing to the jury's knowledge about the results.

9

## DISPOSITION

The five year enhancement imposed and stayed pursuant to Penal Code Section 667 subdivision (a) is ordered stricken and the abstract of judgment amended to reflect the striking of the enhancement. The superior court is ordered to forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects the judgment is affirmed.


ZELON, J.

We concur:


PERLUSS, P. J.


IWASAKI, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.