Filed 2/22/16  P. v. Bergara CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B260564 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA093355) |
| v. | |
| JOSE CARLOS BERGARA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mike Camacho and Douglas Sortino, Judges.  Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Corey J. Robins, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant Jose Carlos Bergara was charged with two counts of committing a lewd act upon a child (Pen. Code, § 288, subd. (a)) and one count of oral

copulation of a child under the age of 10 (Pen. Code, § 288.7, subd. (b)).  In his first trial, held in November 2011, the jury convicted on the two lewd act counts and deadlocked on the oral copulation count.  The court declared a mistrial as to the third count and granted the People's motion for a retrial.  Upon retrial in August 2013, the jury found appellant guilty of the oral copulation count.  The court sentenced appellant on count 1 to eight years, on count 2 to a consecutive term of two years, and on count 3 to a consecutive term of 15 years to life. Appellant raises numerous evidentiary challenges.  We affirm.

## BACKGROUND

*Prosecution Evidence*[1]

Appellant previously lived with his girlfriend, Sara A. and her two daughters, S. (born Aug. 2003) and Lizbeth (born Sept. 2007).  They lived in one bedroom of a house and all slept in the same room.  Appellant and Sara A. had a baby daughter, D., who also lived with them.

According to S., appellant and Sara A. engaged in sex and watched pornography every day in the children's presence.  S. asked her mother to stop, but Sara A. "got mad."

When S. was five years old, appellant began "putting his private part in [her] private parts" almost every day until S. turned six.[2]  At the second trial, S. testified that appellant touched her private parts with his hand or his penis almost every day,

---

[1]     The evidence presented at both trials was substantially the same.  Rather than repeating both sets of evidence, any differences will be noted.

[2]     Appellant's conduct against S. is not at issue in this appeal, which addresses only the charges related to his conduct against Lizbeth.

with his pants and underwear pulled down. S. told her mother, but Sara A. said S. was dreaming.

When S. was six years old and Lizbeth one year old, S. needed to use the bathroom, so she went in even though she knew someone was already in there. After washing her hands, she turned to dry them and saw through the shower curtain the shadow of appellant in the shower with Lizbeth, putting his penis in Lizbeth's mouth. S. was able to see through the plastic shower curtain, which had pictures of leaves on it. At retrial, S. testified that she knew it was Lizbeth and appellant because she knew how tall Lizbeth was, and no one else was in the house at the time. S. screamed and went to her room. When S. told Sara A. what she had seen, Sara A. told S. she had been dreaming.

At the second trial, S. did not remember what she did or said after seeing appellant and Lizbeth in the shower. She did not remember if appellant said anything to her or if he stopped when he saw her. She did not remember if appellant had ever given Lizbeth showers before.

S. and Lizbeth were placed in foster care with Maria L. in January 2010. Maria L. adopted S. and Lizbeth in April 2013.

After being placed with Maria L., S. told Maria L. she had been sexually abused. S. also told Maria L. about seeing appellant in the shower with Lizbeth. After S. told Maria L. she did not want to have visits with appellant because of his conduct, the visits were stopped.

Maria L. noticed that Lizbeth sometimes would "lay on her side" and simulate having sex. Lizbeth told Maria L. she saw appellant "doing that to her mother." Lizbeth also told Maria L. appellant "put his pee-pee in her mouth." When Maria L. bathed Lizbeth, Lizbeth would bend over and say that appellant "would always put his pee-pee right there in her little tail." Maria L. reported these

3

accusations to social workers and police officers, and she took Lizbeth to be examined by a doctor.

Lizbeth often repeated the statements about appellant's actions, sometimes following Maria L. around the house, saying "Mommy, my stepdad put his pee-pee in my . . . pee-pee and in the back." When she did so, Maria L. would reassure her that those things would not happen to her any more.

Nancy Clark, a social service practitioner for San Bernardino County Children and Family Services, was assigned to Lizbeth and S.'s case in July 2010. She acknowledged that a young child exposed to pornography or sex might "act out" or "fantasize," but she did not believe that happened in this case. She found S. to be very credible when she interviewed her.

Baldwin Park Police Detective Diana Larriva testified that she arrested and interviewed appellant in July 2010, but she questioned him only about S. because she was unaware of the allegations involving Lizbeth. During the interview, appellant initially denied sexually abusing S. but subsequently admitted that once when S. was seven years old, he became sexually aroused by her, got on top of her and began thrusting his hips against her. He said his penis "may have slightly penetrated" S.'s vagina, but he stopped when S. yelled out and he realized what he was doing was wrong. Appellant denied abusing Lizbeth.

At the second trial, Detective Larriva further testified that she interviewed Lizbeth, S. and Maria L. after learning of the allegations regarding Lizbeth. S. told Detective Larriva about the incident in the shower and said that appellant yelled at her and told her to leave the bathroom.

Lizbeth testified at the second trial, but not at the first. She was five years old at the time of the second trial. She testified that appellant was "the man that [she didn't] like" because he "put his pee-pee in [her] mouth" when she was two

4

years old.  She said it happened at her mother's house but she did not remember which room.  She initially testified that she told S. about it, but subsequently stated that she told only Maria L.  She also stated that appellant put his penis in her butt and that she told Maria L. about this.

*Defense Evidence*

Appellant testified at the first trial that he and Sara A. had sex in the bedroom they shared with the children after the children fell asleep, but sometimes the children awakened and saw them having sex.  He and Sara A. occasionally watched pornography, and the children sometimes awakened and saw it.

Appellant admitted sexually abusing S. one time, by accident.  According to appellant, he was aroused by phone sex with Sara A. when S. got in bed with him and climbed on him to ride him like a horse.  Appellant got on top of S. and began to move as if he was having sex with Sara A.  S.'s clothes were on, and appellant did not remove his underwear.  He denied penetrating S.  Appellant pled no contest to one count of violating Penal Code section 288, subdivision (a) based on this incident with S.  He was sentenced to three years in prison and was serving that term at the time of the first trial.

Appellant denied ever showering with Lizbeth or sexually abusing her.  He locked the bathroom door when he showered, and S. and Lizbeth never entered the bathroom while he showered.

Appellant did not testify at the second trial.  Covina Police Officer Tom Tardiff and social worker Patricia Walsh testified.  Officer Tardiff testified that he interviewed S. and Maria L. after receiving a child abuse referral regarding S. from Walsh.  S. reported that appellant put his penis in her vagina on ten occasions and

5

had rubbed her vagina and bottom with his hands.  There were no reports of abuse regarding Lizbeth.

Walsh was a social worker with the foster family agency through which Maria L. was a foster parent.  In June 2010, Maria L. told Walsh that S. no longer wanted to see appellant because he had sexually abused her.  Maria L. reported that S. had never seen appellant sexually abuse Lizbeth.  However, a few months later Maria L. told Walsh that S. reported the incident in the shower between appellant and Lizbeth.

## DISCUSSION

I. *Admission of Lizbeth's Statements*

Appellant contends the trial court erred in admitting Lizbeth's statements to Maria L. under Evidence Code section 1360[3] because they were unreliable and insufficiently corroborated by other evidence.  He further argues that the admission of her statements violated section 702 and his due process rights.

A. *Section 402 Hearing*

Prior to the first trial, the court held a section 402 hearing to determine the admissibility of Lizbeth's statements in the event she failed to qualify as a witness under section 701.[4]  Lizbeth, who was four years old, did not qualify as a witness because she was unable to understand the difference between the truth and a lie

---

[3]     Unspecified statutory references will be to the Evidence Code.

[4]     Under section 701:  "A person is disqualified to be a witness if he or she is:  [¶] (1)  Incapable of expressing himself or herself concerning the matter so as to be understood, either directly or through interpretation by one who can understand him; or

and unable to express herself sufficiently to give testimony. The prosecution therefore sought to introduce Lizbeth's statements to Maria L. pursuant to section 1360.[5]

Maria L. testified that, about four months after the girls began living with her, she noticed Lizbeth "doing sexual things." Once she saw Lizbeth "touching her private parts with her hand." She asked Lizbeth why she did that, and Lizbeth replied that "her stepfather would touch her parts." When Maria L. bathed Lizbeth, Lizbeth repeatedly said that appellant "put his private parts in her mouth" and "in the back." Maria L. would ask Lizbeth if she was sure, and Lizbeth would reply, "Yes, Mommy. Yes." Lizbeth repeated these statements to Maria L. every day, and the day before the hearing she again told Maria L., "my stepfather put his pee-pee in my mouth and my butt." Maria L. acknowledged that Lizbeth repeated the statements "like a little parrot." Maria L. testified that she tried to comfort Lizbeth when she made these statements, but she denied rewarding Lizbeth with cookies or treats for repeating the statements. She stated that she gave Lizbeth affection at other times, not only when she repeated the statements.

To corroborate Maria L.'s testimony, the People presented the testimony of Detective Larriva, who interviewed appellant in 2010 about the sexual abuse allegations. Detective Larriva testified, as she did at trial, about appellant's admission that he "thrust his hips on" S. and "may have accidentally" penetrated her vagina with his penis.

---

[¶] (2) Incapable of understanding the duty of a witness to tell the truth." (§ 701, subd. (a).)

[5] Section 1360 "creates a limited exception to the hearsay rule in criminal prosecutions for a child's statements describing acts of child abuse or neglect, including statements describing sexual abuse. [Citations.]" (*People v. Roberto V.* (2001) 93 Cal.App.4th 1350, 1367.)

S. also testified at the hearing. She testified about the incident in which she saw appellant put his penis in Lizbeth's mouth while they were in the shower. She screamed, but she did not tell appellant to stop because he would have hit her. S. ran out of the bathroom and later told her mother, but Sara A. said S. was dreaming. S. later told Maria L. about the incident.

The trial court found sufficient indicia of reliability supported Lizbeth's statements. The court reasoned that a child of Lizbeth's young age typically would not make such statements, and that her statements were made spontaneously, without elicitation from anyone. In addition to finding sufficient indicia of reliability, the court found that Lizbeth's statements were corroborated by S.'s account of seeing appellant in the shower with Lizbeth and by appellant's own admission of improper sexual contact with S.

After finding that the statements satisfied section 1360, the court found that the statements did not constitute inadmissible hearsay under *Crawford v. Washington* (2004) 541 U.S. 36 (*Crawford*). Reasoning that Lizbeth's statements were made spontaneously and were not made to a child abuse expert during a forensic examination or to a police officer, the court found that her statements were not testimonial for *Crawford* purposes. The court further found that, under section 352, the probative value of the statements outweighed the prejudicial effect because the statements were crucial to the prosecution case.


B.    *Section 1360*

Section 1360 provides in pertinent part: "(a) In a criminal prosecution where the victim is a minor, a statement made by the victim when under the age of 12 describing any act of child abuse or neglect performed with or on the child by another, or describing any attempted act of child abuse or neglect with or on the

8

child by another, is not made inadmissible by the hearsay rule if all of the following apply: [¶] (1) The statement is not otherwise admissible by statute or court rule. [¶] (2) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability. [¶] (3) The child either: [¶] (A) Testifies at the proceedings. [¶] (B) Is unavailable as a witness, in which case the statement may be admitted only if there is evidence of the child abuse or neglect that corroborates the statement made by the child." (§ 1360, subd. (a).)

Evidence admitted under section 1360 must "satisfy the 'particularized guarantees of trustworthiness' standard under the confrontation clause. [Citation.]" (*People v. Eccleston* (2001) 89 Cal.App.4th 436, 445.) Factors relevant to whether hearsay statements by a child witness in a child sexual abuse case are reliable and bear indicia of reliability are "(1) spontaneity and consistent repetition; (2) the mental state of the declarant; (3) use of terminology unexpected from a child of that age; and (4) lack of a motive to fabricate. [Citation.] Section 1360, subdivision (a)(2) effectively incorporates that standard by requiring that the time, content and circumstances of the statement itself provide sufficient indicia of reliability. . . . [¶] A trial court's findings concerning the indicia of reliability are subject to independent review on appeal. [Citation.]" (*Id*. at pp. 445-446.)

Appellant contends Lizbeth's statements were inherently unreliable and uncorroborated by other evidence. He argues that the only basis for the trial court's finding of reliability was the spontaneity of Lizbeth's statement, "Mommy, my stepfather put his pee-pee in my mouth and in my butt," and that there were no other indicia of reliability. We are not persuaded.

Lizbeth told Maria L. repeatedly that appellant touched her and "put his private parts in her mouth" and "in the back." Not only were her statements

repeated consistently, they were corroborated by Maria L.'s observations of Lizbeth doing "sexual things." As the trial court reasoned, a child of her age would not normally make such statements, and the statements were made spontaneously, with no elicitation from anyone. Moreover, as the court noted, Maria L.'s observations of Lizbeth's behavior were not subject to section 1360 and thus were admissible.

Lizbeth's statements also were consistent with S.'s account of seeing appellant in the shower with Lizbeth. Appellant contends that "[S.]'s description was confused and contradictory." However, S. never wavered from the salient point that she saw appellant putting his penis in Lizbeth's mouth, even if there were minor discrepancies in some of the details of the incident. S.'s account thus corroborated Lizbeth's statements, providing another indicium of reliability.

Appellant contends that Lizbeth had a motive to fabricate in order to remain placed with Maria L. and to receive "affection and attention" from Maria L. This is entirely speculative. There is no evidence that Lizbeth understood that spontaneously making these statements to Maria L. would enable her to remain with Maria L. In addition, Maria L. testified that although she tried to comfort Lizbeth when she made these statements, she did not reward Lizbeth for repeating the statements. She gave Lizbeth affection at other times, not only when she repeated the statements.

Appellant relies on the trial court's finding that Lizbeth was not competent to testify because she was unable to understand the difference between the truth and a lie. However, the California Supreme Court has held that "a finding that a child is not competent to differentiate between truth and falsehood or to understand the duty to tell the truth at the time he or she is prepared to testify should not be an absolute bar to the admission of the child's hearsay testimony, but only one

10

circumstance to be considered in determining whether the child's statement is reliable." (*In re Cindy L.* (1997) 17 Cal.4th 15, 18; see also *People v. Brodit* (1998) 61 Cal.App.4th 1312, 1330 ["even if the child was incompetent to testify at trial because he or she did not understand the duty to tell the truth, this did not necessarily render the child's hearsay statements unreliable, but was merely a factor to consider"].)  As discussed above, other circumstances indicated the statements were reliable, despite the finding that Lizbeth was not competent to differentiate between truth and falsehood.  Because Lizbeth's statements were supported by sufficient indicia of reliability, the trial court did not abuse its discretion in admitting them.

C.     *Sections 701 and 702*

Section 701 provides in part that a person is disqualified to be a witness if he or she is "[i]ncapable of understanding the duty of a witness to tell the truth." (§ 701, subd. (a)(2).)  Under section 702, "the testimony of a witness concerning a particular matter is inadmissible unless he has personal knowledge of the matter." (§ 702, subd. (a).)

Appellant contends that Lizbeth's statements to Maria L. were inadmissible under section 702 because the prosecution did not establish that Lizbeth was "reliable in the first instance."  Appellant did not raise an objection under section 702 in the trial court and therefore has forfeited this claim.  "[T]rial counsel's failure to object to claimed evidentiary error on the same ground asserted on appeal results in a forfeiture of the issue on appeal.  [Citations.]" (*People v. Dykes* (2009) 46 Cal.4th 731, 756; see *Oiye v. Fox* (2012) 211 Cal.App.4th 1036, 1066 [objection pursuant to § 702 must be raised in the trial court]; *People v. Lewis*

11

(2001) 26 Cal.4th 334, 357 [failure to object to witness's testimony based on § 702 constituted a waiver of the claim on appeal] (*Lewis*).)

Even if not forfeited, appellant's claim fails.[6] Appellant relies on *People v. Lyons* (1992) 10 Cal.App.4th 837 (*Lyons*), in which the court held that the witness's preliminary hearing testimony was erroneously admitted at trial because it showed "that the witness was delusional and unable to distinguish truth from lies at the time of the preliminary hearing." (*Id.* at p. 844.) In *Lyons*, the witness's statements at the preliminary hearing were provably false.[7] By contrast, there were numerous circumstances here indicating that Lizbeth's statements were reliable at the time she made them, and her statements were consistent and corroborated by other evidence. *Lyons* accordingly does not support appellant's position. (See

---

[6] Because we conclude that appellant's argument fails, we further reject his claim that trial counsel rendered ineffective assistance of counsel by failing to object on this ground. "'If the record on appeal sheds no light on why counsel acted or failed to act in the manner challenged, an appellate claim of ineffective assistance of counsel must be rejected unless counsel was asked for an explanation and failed to provide one, or there simply could be no satisfactory explanation. [Citation.] Otherwise, the claim is more appropriately raised in a petition for writ of habeas corpus.' [Citation.] 'Failure to object rarely constitutes constitutionally ineffective legal representation.' [Citation.]" (*People v. Gray* (2005) 37 Cal.4th 168, 207.) "Further, 'a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.' [Citation.]" (*People v. Carrasco* (2014) 59 Cal.4th 924, 982.) For the reasons discussed above, we conclude that Lizbeth's statements were properly admitted. Appellant therefore did not suffer prejudice from their admission.

[7] The witness "claimed to have a third orifice between her vagina and anus. It was stipulated that [she] did not have a third orifice." (*Lyons*, *supra*, 10 Cal.App.4th at p. 842.) The witness also claimed that the defendant assaulted her in retaliation for her testimony against him when he was tried for her husband's murder, but there had never been a trial concerning her husband's death. (*Id.* at p. 843.)

*Lewis*, *supra*, 26 Cal.4th at p. 357 [although the witness's "testimony may have consisted of inconsistencies, incoherent responses, and possible hallucinations, delusions and confabulations, [he] 'presented a plausible account of the circumstances of [the] murder'"]; *People v. Anderson* (2001) 25 Cal.4th 543, 574 [noting "the many indicia by which a rational trier of fact could conclude that [the witness], despite her specific delusions, was actually present during the [crime], and had accurately perceived and recollected those events," such as her "plausible account of the circumstances" and description of details unlikely to be known by someone not present] (*Anderson*).)

Appellant contends that the prosecution was required to establish that "Lizbeth was reliable in the first instance" in order for her statements to be admissible. However, "[e]xcept as otherwise provided by statute, every person, irrespective of age, is qualified to be a witness and no person is disqualified to testify to any matter." (§ 700.) "Capacity to communicate, or to understand the duty of truthful testimony, is a preliminary fact to be determined exclusively by the court, the burden of proof is on the party who objects to the proffered witness, and a trial court's determination will be upheld in the absence of a clear abuse of discretion. [Citations.]" (*Anderson, supra*, 25 Cal.4th at p. 573.) Appellant has not met his burden of establishing that Lizbeth was unreliable or unable to "accurately perceive[] and recollect[]" the events. (*Id.* at p. 574.) "In short, there was no substantial basis for the court to exclude [Lizbeth's] testimony; rather, it was up to the jury to determine whether [Lizbeth's] recollections were true. [Citations.]" (*Lewis, supra*, 26 Cal.4th at p. 358.)

D.    *Due Process*

Appellant contends that the admission of Lizbeth's statements to Maria L. violated his federal due process rights because the "[a]dmission of unreliable evidence violates a defendant's Fourteenth Amendment right to a fair trial."

"To prove a deprivation of federal due process rights, [a defendant] must satisfy a high constitutional standard to show that the erroneous admission of evidence resulted in an unfair trial. 'Only if there are no permissible inferences the jury may draw from the evidence can its admission violate due process. Even then, the evidence must "be of such quality as necessarily prevents a fair trial." [Citations.] Only under such circumstances can it be inferred that the jury must have used the evidence for an improper purpose.' [Citation.] 'The dispositive issue is . . . whether the trial court committed an error which rendered the trial "so 'arbitrary and fundamentally unfair' that it violated federal due process." [Citation.]' [Citation.]" (*People v. Albarran* (2007) 149 Cal.App.4th 214, 229-230 (*Albarran*).)

"The United States Supreme Court has determined that the introduction of reliable hearsay evidence in a criminal case does not violate either due process or the right to confront and cross-examine witnesses. [Citations.] Indicia of reliability are 'particularized guarantees of trustworthiness' concerning the hearsay statement and the totality of circumstances that surround the making of the statement that render the declarant particularly worthy of belief in making its determination of trustworthiness. [Citation.]" (*People v. Tatum* (2003) 108 Cal.App.4th 288, 295 (*Tatum*).)

As discussed above, the trial court properly found that Lizbeth's statements to Maria L. were supported by indicia of reliability. "Admission of hearsay that is trustworthy and contains sufficient indicia of reliability violates neither due

14

process or the confrontation clause. [Citations.]" (*Tatum*, *supra*, 108 Cal.App.4th at p. 300.) Appellant has failed to establish that the admission of Lizbeth's testimony rendered his trial "'arbitrary and fundamentally unfair.'" (*Albarran*, *supra*, 149 Cal.App.4th at p. 230.)

II. *Confrontation Clause*

Appellant contends the admission of Lizbeth's statements to Maria L. in the first trial and her testimony in the second trial violated his Sixth Amendment rights to confrontation and cross-examination and his due process rights. The trial court's rulings on the admission and exclusion of evidence are reviewed for abuse of discretion. (*People v. Chism* (2014) 58 Cal.4th 1266, 1291.) "'[I]f the ruling was correct on any ground, we affirm.' [Citation.]" (*Id.* at p. 1295, fn. 12.)

"'"'The United States Supreme Court has established that a defendant's Sixth Amendment right to confrontation is a fundamental right, applicable to the states through the Fourteenth Amendment. [Citation.] The California Constitution now provides a specific guarantee of the right to confrontation: 'The defendant in a criminal cause has the right . . . to be confronted with the witnesses against the defendant.' (Cal. Const., art. I, § 15.)"'" (*People v. Christensen* (2014) 229 Cal.App.4th 781, 789-790.)

However, the confrontation clause "'does not necessarily prohibit the admission of hearsay statements against a criminal defendant . . . .'" (*People v. Kons* (2003) 108 Cal.App.4th 514, 521.) "'Only the admission of *testimonial* hearsay statements violates the confrontation clause . . . .' [Citations.] . . . 'The court [in *Crawford*, *supra*, 541 U.S. 36] explained that the confrontation clause addressed the specific concern of "[a]n accuser who makes a formal statement to government officers" because that person "bears testimony in a sense that a person

15

who makes a casual remark to an acquaintance does not." [Citation.] The statement of a three-year-old declarant made to his aunt is more like a "casual remark to an acquaintance" and is therefore not a testimonial statement under *Crawford*. [Citation.]" (*People v. Loy* (2011) 52 Cal.4th 46, 66 (*Loy*).) "To be 'testimonial,' (1) the statement must be 'made with some degree of formality or solemnity,' and (2) its 'primary purpose' must 'pertain[] in some fashion to a criminal prosecution.' [Citations.]" (*People v. Holmes* (2012) 212 Cal.App.4th 431, 438 (*Holmes*); *People v. Edwards* (2013) 57 Cal.4th 658, 705 (*Edwards*).)

Lizbeth's statements to Maria L. are not testimonial. They were not made with any degree of formality, and their primary purpose did not pertain to a criminal prosecution. Appellant contends that Lizbeth's statements were made for purposes of criminal prosecution because Maria L. was her foster mother and thus "any objective witness would reasonably believe [the statements] would be available for a later prosecution." Appellant's argument is not supported by the case he cites, *Davis v. Washington* (2006) 547 U.S. 813 (*Davis*). In the two consolidated cases in *Davis*, the Supreme Court considered whether statements made to law enforcement personnel were testimonial. In the first of the consolidated cases, *Davis*, the court concluded that the witness's statements during a 911 call were not testimonial for purposes of the confrontation clause. (*Id.* at pp. 826-828.) The court reasoned that the circumstances indicated the primary purpose of the statements was not to give a formal report of past facts, but "to enable police assistance to meet an ongoing emergency." (*Id.* at p. 828.)

By contrast, in the second of the consolidated cases, *Hammon v. Indiana*, the court held that the statements were testimonial. (*Davis*, *supra*, 547 U.S. at p. 829.) There, police officers responded to a domestic violence call, but when they arrived

16

the wife said there was no problem. One of the officers re-interviewed the wife and again asked her to explain what had occurred. At trial, the officer testified that the questioning was part of an investigation into possible criminal conduct. The court thus concluded that, as "statements under official interrogation," they were "inherently testimonial." (*Id.* at p. 830.)

Lizbeth's statements are more similar to the statements during the 911 call in *Davis* than to those in *Hammon*. They were not made in response to questioning by an officer during an investigation. Instead, they were made spontaneously to her foster mother. Thus, her statements lack the "two critical components" of testimonial statements: they were not made with any degree of formality, and their primary purpose did not pertain to a criminal prosecution. (*Edwards*, *supra*, 57 Cal.4th at p. 705; see *Holmes*, *supra*, 212 Cal.App.4th at p. 438 ["It is now settled in California that a statement is not testimonial unless both criteria are met."].) Maria L.'s status as Lizbeth's foster mother does not transform the statements into testimonial statements for purposes of the confrontation clause. The admission of Lizbeth's statements to Maria L. in the first trial and her testimony in the second trial did not violate appellant's constitutional rights.

III.    *Propensity Evidence*

Section 1108 provides in part: "In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352." (§ 1108, subd. (a).)

Appellant contends the evidence of other crimes involving S. should not have been admitted in either trial.[8] We disagree.

## A. *Hearing Before First Trial*

The trial court weighed the probative value against the prejudicial impact of the uncharged sex offense involving S. pursuant to section 352 and concluded that there was no less prejudicial alternative to admitting the evidence. The court reasoned that the offense upon S. was not remote and in fact was committed during the same time frame as the charged offenses. The court further reasoned that the offense was similar to the charged offense and that, although it was extremely prejudicial, the uncharged offense helped explain S.'s state of mind when she observed Lizbeth. Although the court admitted the evidence of appellant's conduct involving S., the court excluded as unduly prejudicial evidence that appellant inflicted corporal injury on his daughter, D., describing it as "overkill."

## B. *Hearing Before Second Trial*

At the second trial, which involved only the oral copulation count, the People sought to admit, inter alia, evidence of the uncharged sexual offenses against S., other sexual offenses against Lizbeth, and physical abuse of D. and S. The trial court concluded that any prior acts against S. and Lizbeth were admissible because they were similar to the charged offense and were committed close in time to the charged offense. The court further reasoned that the victims were of similar ages and in appellant's care in the same home, and that the evidence was relevant to the victims' credibility.

---

[8] Appellant testified about the purportedly "accidental" sexual abuse of S. in his first trial and therefore cannot challenge the admission of the evidence of that incident in the first trial.

## C.    *Section 1108*

In deciding whether to admit propensity evidence under section 1108, "trial judges must consider such factors as its nature, relevance, and possible remoteness, the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or excluding irrelevant though inflammatory details surrounding the offense. [Citations.]" (*People v. Falsetta* (1999) 21 Cal.4th 903, 917 (*Falsetta*).) "Ultimately, the determination of whether the probative value of such evidence is substantially outweighed by the possibility of undue consumption of time, unfair prejudice or misleading the jury is 'entrusted to the sound discretion of the trial judge who is in the best position to evaluate the evidence. [Citation.]' [Citation.]" (*People v. Ennis* (2010) 190 Cal.App.4th 721, 733.) "The court's ruling under section 1108 is subject to review for abuse of discretion. [Citation.]" (*Loy*, *supra*, 52 Cal.4th at p. 61.) The court did not abuse its discretion in admitting the evidence in either the first trial or the retrial.

Appellant contends that the evidence was so prejudicial that it affected his right to a fair trial and was insufficiently probative. "Evidence of previous criminal history inevitably has some prejudicial effect. But under section 1108, this circumstance alone is no reason to exclude it. '[S]ection 1108 affects the practical operation of . . . section 352 balancing "'because admission and consideration of evidence of other sexual offenses to show character or disposition would be no longer treated as intrinsically prejudicial or impermissible. Hence,

19

evidence offered under [section] 1108 could not be excluded on the basis of [section] 352 unless "the probability that its admission will . . . create substantial danger of undue prejudice" . . . substantially outweighed its probative value concerning the defendant's disposition to commit the sexual offense or offenses with which he is charged and other matters relevant to the determination of the charge. As with other forms of relevant evidence that are not subject to any exclusionary principle, *the presumption will be in favor of admission.*'" [Citation.]' [Citation.]" (*Loy*, *supra*, 52 Cal.4th at p. 62.)

Appellant has not overcome the presumption in favor of admissibility. "'The principal factor affecting the probative value of an uncharged act is its similarity to the charged offense. . . .' [Citation.]" (*People v. Hollie* (2010) 180 Cal.App.4th 1262, 1274 (*Hollie*).) Here, the uncharged offenses were very similar to the charged offenses and were committed during the same time frame. All the acts involved girls of approximately the same age, sisters who lived with appellant and were left in his care while their mother was at work. Moreover, the facts of the uncharged offenses "were not particularly inflammatory compared to" the facts of the charged offense. (*Loy*, *supra*, 52 Cal.4th at p. 62.)

Because of the similarity between the offenses, the probative value concerning appellant's disposition to commit the offenses was great. In addition, the evidence was relevant to supporting the credibility of S. and Lizbeth. The fact that appellant had been convicted of the offenses against Lizbeth in the first trial further "supports their admission" in the second trial because "[h]is commission of those crimes had already been established and was thus certain, and [he] bore no new burden of defending against the charge[s]." (*Loy*, *supra*, 52 Cal.4th at p. 61.) The possibility of undue prejudice does not outweigh the probative value of the evidence. (See *Hollie, supra*, 180 Cal.App.4th at p. 1274 ["'The factors affecting

20

the prejudicial effect of uncharged acts include whether the uncharged acts resulted in criminal convictions and whether the evidence of uncharged acts is stronger or more inflammatory than the evidence of the charged offenses.'"].)

Appellant contends that S.'s testimony regarding appellant's abuse of her corroborated her testimony regarding appellant's abuse of Lizbeth, which he describes as "self-corroboration." However, the evidence regarding appellant's abuse of S. was not dependent solely on S.'s testimony. Rather, appellant himself admitted to the conduct in the first trial, and Detective Larriva testified about the abuse of S. in both trials.

Appellant contends that the admission of propensity evidence under section 1108 violated his right to a fair trial and his rights to due process and equal protection. As appellant concedes, his challenge to the constitutionality of section 1108 has been rejected by the California Supreme Court. (See *Loy, supra*, 52 Cal.4th at pp. 60-61; *Falsetta, supra*, 21 Cal.4th at pp. 910–922.) We decline his invitation to revisit the issue and we follow our high court's precedent, as we must. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455-456; *Lucent Technologies, Inc. v. Board of Equalization* (2015) 241 Cal.App.4th 19, 35 ["We are bound to follow the decisions of our Supreme Court . . . ."].)

**DISPOSITION**

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.


We concur:


EPSTEIN, P. J.


MANELLA, J.

22